458 So.2d 726 (1984)
Edward J.C. STEVENS
v.
STATE of Mississippi.
No. 54435.
Supreme Court of Mississippi.
October 17, 1984.
Rehearing Denied November 14, 1984.
*727 J. Kennedy Turner, III, Philadelphia, for appellant.
Bill Allain, Atty. Gen. by Catherine Walker Underwood, Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, P.J., and ROY NOBLE LEE and PRATHER, JJ.
PRATHER, Justice, for the Court:
The appellant, Edward J.C. Stevens, was charged with and convicted of murder of his wife, Louise Stevens in the Circuit Court of Neshoba County and sentenced to life imprisonment in the Mississippi Department of Corrections.
Stevens appeals, assigning as error:
(1) The admission of appellant's confession where his mental, physical and intoxicated condition allegedly prevented a knowing, voluntary, and intelligent waiver of his privilege against self-incrimination and right to counsel;
(2) The admission of photographs depicting the inside of appellant's home and the body of the deceased;
(3) The granting of the State's "malice aforethought" instruction;
(4) The refusal of the appellant's manslaughter instructions.
We affirm.

I.
On the morning of February 5, 1982, appellant Edward J.C. Stevens, his wife Louise, and Louise's nephews, Tommy and Terry Wright, drank beer together. Around 11:00 a.m., Edward, Louise and Tommy drove to Phillip's Grocery in Lauderdale County to buy more beer. After purchasing two cases of beer, Edward, Louise and Tommy returned to the appellant's home and continued drinking. Around 2:00 that afternoon, Terry picked Tommy up from the appellant's house. Appellant Stevens and Louise remained at the house drinking beer.
Around 8:00 p.m. that evening, appellant carried his badly beaten wife to the Neshoba County Hospital. Louise had been dead for two or three hours. Her death was the result of massive blood loss resulting from multiple bruises and abrasions to her entire body and deep lacerations of her scalp and labia.
Appellant was placed in custody at the Union City Jail. A blood alcohol test performed on the appellant at 8:15 p.m. revealed a blood alcohol content of .16. While at the Union City Jail, appellant fell from his bed and hit his head on the bars of his cell and suffered a broken arm. Dr. Wm. Davis, who treated the appellant, testified that the appellant appeared malnourished, emaciated, smelled of alcohol and had slurred speech, but was not irrational or disoriented. Following treatment of his injuries, the appellant was transported to the Neshoba County Jail.
Around 11:30 p.m. that evening, Neshoba County Sheriff J.A. Phillips read appellant Stevens his rights. Stevens signed a statement waiving his right to counsel and privilege *728 against self-incrimination. On this occasion, appellant's speech was slurred, and his gait suggested that he was under the influence of alcohol. Appellant complained that his arm hurt and cried about his wife being dead, but otherwise made no statement and was returned to his cell.
The following morning, February 6, 1982, Sheriff Phillips was notified at 7:00 a.m. that the appellant wished to speak to him. Around 9:55 a.m. Sheriff Phillips, accompanied by Deputy Sheriff Dwight Griffin, and Investigator Larry Myers, spoke with appellant Stevens at the jail. Phillips again informed appellant of his rights, and appellant signed another waiver form. Stevens then told the sheriff that on the previous day, he, Louise and Tommy Wright went to Lauderdale County to buy beer, then returned to his home. Louise accused the appellant of "going with somebody". The appellant accused Louise of "going with somebody". Louise told the appellant that she "wanted to go with three men" and named them. The appellant became enraged and chased his wife throughout the house, beating her repeatedly with a firepoker. According to Deputy Sheriff Dwight Griffin, at the time of his statement, appellant's speech and walk appeared normal.
Prior to trial, appellant moved to suppress the statement on the ground that it was obtained from the appellant without a voluntary, knowing and intelligent waiver of the right to counsel and the privilege against self-incrimination. This motion was overruled and Sheriff Phillips was permitted to testify to the contents of the statement at trial.
At the trial, appellant Stevens testified that, after Tommy and Terry Wright left their house, he and Louise continued to drink. Later that afternoon he left the house to buy more beer. When he returned, he found his severely beaten wife lying on the floor of the living room, but did not realize that she was dead. Stevens drove to Tommy Wright's house and asked for his help but was told by Tommy that he didn't want to get involved. Stevens then returned to his house, placed his wife in the car and drove to the Neshoba County Hospital.
Terry Wright testified that appellant came to his house at around 8:00 p.m. on February 5, 1982. According to Terry, appellant Stevens did not ask for any help getting Louise to the hospital, but offered Terry $20.00 to go to the house and see if Louise was dead.
Dr. Glen Anderson, psychiatrist at Whitfield, testified that appellant Stevens had an IQ of between 76 and 78, thus falling into the sub-average category with respect to intellectual function. Proof supported the fact that appellant was a chronic alcoholic with a third grade education and was approximately 54-58 years of age.

II.
The first issue is whether the confession given by the appellant on the morning of February 6th was obtained after a voluntary, knowing and intelligent waiver of his right to counsel and his privilege against self-incrimination. Appellant argues that a combination of factors  intoxication, severely deteriorated physical condition, and sub-standard I.Q. and educational level  prevented a voluntary, knowing and intelligent waiver of appellant's rights.
With respect to the effect of intoxication on the voluntariness of a confession, this Court has held that where the defendant was in "an acute, rampant state of intoxication equivalent to mania," any waiver of constitutional rights could not be voluntary and intentional and the defendant's statement should be excluded. State v. Williams, 208 So.2d 172, 175 (Miss. 1968).
In the case sub judice appellant Stevens' blood alcohol content was .16 at the time of his arrest. The execution of the waiver of rights, however, took place the following morning, some thirteen hours later. Dr. Davis testified that as a chronic drinker the ability of the appellant's body to degrade alcohol in the blood would be increased. Deputy Sheriff Dwight Griffin testified that at the time appellant executed the *729 second waiver his speech and gait were both normal.
With respect to sub-normal intelligence and educational level, this Court has held that mental weakness in and of itself will not invalidate a confession unless it is shown that the weak minded person has been over-reached. Williamson v. State, 330 So.2d 272, 276 (Miss. 1976). In each case, the totality of the circumstances must be considered to determine whether the mentally deficient defendant has been exploited. Neal v. State, 451 So.2d 743 (Miss. 1984) (upholding admission of confession given by defendant with IQ of 60 even though scrutiny was heightened since case involved death penalty).
Significantly, in the case sub judice, it was the appellant who requested that the sheriff be summoned so that he could make a statement. The appellant, prior to making the statement, told Sheriff Phillips that he had something he had to get off his conscience. Sheriff Phillips testified that appellant read the waiver form and that he read the waiver form to the appellant. Investigator Meyers testified that the appellant stated that he understood the waiver. No evidence was presented by the defense to suggest that there was any threats, coercion or promises of leniency surrounding the execution of the waiver and the statement in this case.
No Mississippi case is found which invalidates a confession because of the deteriorated physical condition of the defendant. In the case sub judice, appellant's physical disabilities consisted of a general malnourishment, a broken arm and a head injury. The only medication administered by Dr. Davis to the appellant was a local anesthetic to permit suturing of the scalp laceration, which required three stitches (R. 47).
This Court concludes that the trial court's admission of the confession under these circumstances was proper. The proof failed to substantiate appellant's claim that appellant's prior intoxication, physical condition, or intelligence level, or the combination of these factors, operated to prevent a voluntary, knowing, and intelligent waiver of constitutional rights. The admission of the confession was proper.

III.
Whether the trial court erred in admitting (A.) photographs of the deceased and (B.) of the inside of the appellant's house?

IIIA.
At trial eight photographs of the deceased were offered into evidence. The defense objected to the introduction of the photographs on the ground that any probative value would be outweighed by the prejudicial impact of the pictures upon the jury. The defense further offered to stipulate to "anything the District Attorney could reasonably hope to prove by the photographs ..." The court overruled the objection and admitted some of the photographs into evidence.
Admissibility of photographs rests within the sound discretion of the trial judge and will be upheld absent a showing of abuse of discretion. Edwards v. State, 413 So.2d 1007 (Miss. 1982); Steed v. State, 396 So.2d 625 (Miss. 1981); Irving v. State, 228 So.2d 266 (Miss. 1969). The fact that a photograph of the deceased in a homicide case might arouse the emotions of jurors does not of itself render it incompetent evidence as long as its introduction serves some useful evidentiary purpose. Butler v. State, 320 So.2d 786, 789 (Miss. 1975); May v. State, 199 So.2d 635, 640 (Miss. 1967). This Court has upheld, as serving legitimate evidentiary purposes, the admission of photographs depicting the location of wounds, Clingon v. State, 293 So.2d 823 (Miss. 1974); corroborating the type of weapon used, Mallette v. State, 349 So.2d 546 (Miss. 1977); establishing the identity of the victim, Steed v. State, 396 So.2d 625 (Miss. 1981), tending to show the extent of force and violence used. Dase v. State, 356 So.2d 1179 (Miss. 1978).
In the case sub judice, the trial court was of the opinion that photographs were probative on the issue of the manner of death. *730 In addition, the photographs tended to corroborate the use of a firepoker as the murder weapon and established both the multiplicity of blows administered and the extent of force and violence used.
This Court concludes that the admission of the photographs of the deceased did not constitute an abuse of the trial judge's discretion. But further, this Court observes definite probative value in their introduction.

IIIB.
Appellant further contends that the trial court erred in admitting a second group of photographs depicting the interior of the appellant's home. The argument on appeal here is that the State failed to establish that the authorities entered the appellant's home pursuant to a lawful search warrant or with the appellant's consent; therefore, it is argued, the photographs are inadmissible as the product of an illegal search.
The record reflects that defense counsel objected to the photographs of the defendant's home on the basis of "all of the same objections that I have stated previously as to the other photographs". One of the previous objections was that a proper predicate had not been laid for the introduction of the photographs. The State argues that this objection was not broad enough to encompass the Fourth Amendment claim now raised by the appellant.
The general rule is that a failure to object with specificity in the trial court below results in a waiver of review by this Court. Copeland v. State, 423 So.2d 1333 (Miss. 1982). The rule applies to Fourth Amendment claims; where the defendant fails to object to the admission of illegally obtained evidence, the objection is waived. Henry v. State, 198 So.2d 213 (Miss. 1967).
This Court applies this rule and holds that the objection to the admissibility of the photographs of defendant's house was waived by the failure to state the additional basis for the objection in the trial court.
We find no reversible error in the admission of the photographs.

IV.
Appellant assigns as error the trial court's granting of Instruction S-2 which reads as follows:
The Court instructs the Jury that "malice aforethought" as charged in the indictment in this case and as referred to in other instructions of the Court is a state of mind and does not have to exist in the mind of the slayer for any given length of time, and if the defendant at the very moment of the fatal blow did so with the deliberate design to take the life of the deceased, and not in necessary self-defense, real or apparent, then it was malice aforethought, and that was truly murder, as if the deliberate design had existed in the mind of the defendant for minutes, hours, days, or weeks, or even years.
Appellant's contention is based solely on this Court's decision in Pittman v. State, 297 So.2d 888 (Miss. 1974). In Pittman the defendant admitted killing the deceased, but claimed that the shooting was justifiable by reason of self-defense. The following instruction with respect to malice aforethought was granted in Pittman, supra:
INSTRUCTION NO. 5
The court instructs the jury for the State of Mississippi that while malice aforethought is a necessary ingredient to the crime of murder, still "malice aforethought" means the same thing as killing a human being with the deliberate design to effect the death of the person killed; and that malice aforethought and deliberate design do not necessarily mean hatred or ill will, and need not exist in the mind of the defendant for any definite time, not for days or hours or even minutes, but if the deliberate design to kill exists but for an instant at the very time the fatal blow was struck, this is sufficient premeditation and deliberation to constitute the offense of murder.
297 So.2d at 892. On appeal this Court held that the instruction was erroneous because *731 "[it] pared away rights of the defendant and required the jury to find him guilty of murder even though the killing might have been justifiable by reason of self-defense." 297 So.2d at 893.
In the case sub judice, Stevens did not plead justification, but rather denied all responsibility for the killing of his wife. Instruction S-2, unlike the instruction condemned in Pittman, clearly informs the jury that a finding of "necessary self-defense, real or apparent" will negate the element of malice aforethought.
In any case, this Court in Pittman voiced its approval of the very instruction given in the case sub judice. 297 So.2d 888, n. 1. This instruction in one form or another, has been approved by this Court for many years. See Lambeth v. State, 23 Miss. 322, (Miss. 1852); Mills v. State, 196 Miss. 287, 17 So.2d 215, (1944); Durrah v. State, 44 Miss. 789 (1871); Carter v. State, 198 Miss. 523, 21 So.2d 404 (1945); Hudson v. State, 185 Miss. 677, 188 So. 561 (1939).
No error was committed by the trial court in granting Instruction S2.

IV.
Appellant further argues that the trial court erred in refusing the appellant's requested instructions on the lesser-included offense of manslaughter.
It is well settled in this state that before a lesser-included offense instruction is given it must be warranted by the evidence. Johnson v. State, 416 So.2d 383 (Miss. 1982); Spencer v. State, 348 So.2d 1030 (Miss. 1977); Murphy v. State, 226 So.2d 755 (Miss. 1969). Where evidence is presented of a physical assault by the victim upon the accused, a manslaughter instruction is warranted. Dase v. State, 356 So.2d 1179 (Miss. 1978) (testimony that deceased drew knife before defendant struck him with a cue stick); Wells v. State, 305 So.2d 333 (Miss. 1975) (testimony that deceased reached across table and grabbed defendant by throat); Lee v. State, 130 Miss. 852, 94 So. 889 (1923) (testimony that deceased struck defendant, then drew a pistol on him).
In the case sub judice, no evidence was presented to suggest that the deceased physically assaulted the appellant. Indeed, the absence of any bruises or scratches on Stevens when taken into custody is countervailing evidence that the appellant was not assaulted. The evidence at best shows mutual accusations of adultery and an admission on the part of the deceased that she had entertained the thought. Mere words, however, no matter how provoking, grievous or reproachful, are not sufficient to reduce an intentional and unjustifiable homicide from murder to manslaughter. Johnson v. State, 416 So.2d 383, 387 (Miss. 1982); Gaddis v. State, 42 So.2d 724 (Miss. 1949); Richardson v. State, 123 Miss. 232, 85 So. 186, 188 (1920).
We conclude that the evidence in the case sub judice did not warrant an instruction on manslaughter. Accordingly, the refusal of appellant's requested manslaughter instructions was not error.
Finding no error in this record, the conviction is affirmed.
AFFIRMED.
WALKER AND ROY NOBLE LEE, P. JJ., and BOWLING, HAWKINS, ROBERTSON and SULLIVAN, JJ., concur.
DAN M. LEE, J., dissents.
PATTERSON, C.J., not participating.