525 So.2d 385 (1988)
Delois KNIEP,
v.
STATE of Mississippi.
No. 57265.
Supreme Court of Mississippi.
January 6, 1988.
Rehearing Denied June 3, 1988.
*386 Dexter C. Nettles, Jr., Vernon R. Cotten, Carthage, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:
This appeal presents important questions concerning the new Mississippi Rules of Evidence adopted January 1, 1986. Of major significance to the reversal of the lower court's ruling is this Court's interpretation of Rule 106. This rule requires a party, introducing a statement, to introduce any other part of that statement which ought, *387 with fairness, to be considered with it. Along with a review of this precedent, Rule 702, expert testimony, and Rule 704, the ultimate issue rule, receive analysis by this Court.
Delois Kniep, the appellant, was convicted of murder in the Circuit Court of Leake County and sentenced to life imprisonment. Mrs. Kniep appealed assigning as error the following:
(1) The court erred in allowing the introduction of photographs of the decedent on the grounds that they were inflammatory and prejudicial against the accused.
(2) The trial court erred in admitting appellant's oral and written statements for the reason that they were not freely and voluntarily given and not intelligently waived.
(3) The court erred in admitting into evidence the physical items found at the scene of decedent's death.
(4) The court erred in refusing to allow the introduction into evidence (A) the full autopsy report of Dr. Thomas Bennett and (B) his opinion that the death of the decedent, Richard Kniep, was due to accidental poisoning by the ingestion of isopropyl or rubbing alcohol.
(5) The trial court erred by refusing to give appellant's circumstantial evidence instruction.

I.
Richard Kniep, the decedent, was taken to Thaggard Hospital in Leake County by his wife, Mrs. Delois Kniep, and a neighbor, on December 24, 1985. The attending physician, Dr. David Moody, pronounced that Richard Kniep was dead upon arrival. In Dr. Moody's opinion, the decedent had expired from loss of a substantial amount of blood.
Thereafter, the sheriff of Leake County, Jimmy Callahan, was summoned to Thaggard Hospital. The sheriff, after advising the defendant of her constitutional rights and the securing of defendant's waiver, conducted an interrogation of Mrs. Delois Kniep. She responded by giving an oral statement that her husband's death was a suicide. Concluding this interview, Mrs. Kniep was taken to the Leake County Sheriff's office in Charthage, Mississippi. While detained at the sheriff's office on December 24, 1985, Delois Kniep gave a second similar oral statement. At this interview, the sheriff requested and secured of Mrs. Kniep permission to search her trailer. A third statement, reduced to writing, was taken from Mrs. Kniep on December 25, 1985, in the Leake County Jail at 12:10 p.m. This statement concerned the events prior to her husband's death on December 24, 1985. It contained admissions that her husband had drunk isopropyl or "rubbing" alcohol and had allegedly attacked her. She allegedly defended herself with a knife, cutting or stabbing her husband about the facial and pelvic areas, including his penis. An autopsy of the deceased was later performed by the state medical examiner. The day of the trial, January 21, 1986, the state introduced the testimony of Dr. David Moody that Kniep's death was due to loss of blood. In the defense to the crime of murder, Mrs. Kniep's counsel introduced the testimony of Dr. Thomas Bennett, State Medical Examiner of the State of Mississippi, that the cause of death was from the ingestion of isopropyl alcohol (rubbing alcohol).

II.

DID THE COURT ERR IN ALLOWING THE INTRODUCTION OF PHOTOGRAPHS OF THE DECEDENT?
Mrs. Kniep objects to the admission of the pictures of the victim's body taken at the hospital on the grounds that the pictures were highly inflammatory and severely prejudiced the jury against her.
To defend this position, Mrs. Kniep cited Hancock v. State, 47 So.2d 833 (Miss. 1950). This Court in Hancock found that the photographs must be "... pertinent, material and relevant as evidence." Id. at 833. Applying the rationale of Hancock to the case at bar, Mrs. Kniep argued that the photographs of Richard Kniep's body at the hospital provide no probative value.
*388 Nonetheless, the defendant fails to appreciate the relevancy of these photographs in connection with the main issue in this case. The new Mississippi Rules of Evidence 401-403 provide the guidelines for determining admissibility of photographs, which rules state:
Rule 401. DEFINITION OF "RELEVANT EVIDENCE"
"Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
Rule 402. RELEVANT EVIDENCE GENERALLY ADMISSIBLE; IRRELEVANT EVIDENCE INADMISSIBLE
All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Mississippi, or by these rules. Evidence which is not relevant is not admissible.
Rule 403. EXCLUSION OF RELEVANT EVIDENCE ON GROUNDS OF PREJUDICE, CONFUSION, OR WASTE OF TIME
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
Therefore, these rules direct that photographs are admissible when relevant; however, "relevant evidence may be inadmissible when its probative value is outweighed by its tendency to mislead, to confuse, or to prejudice the jury." Comm., Mississippi Rule of Evidence 403.
This issue, whether decedent died from blood loss or alcohol consumption, is the common nucleus of the lower court's proceedings. Therein, these photographs are highly relevant in depicting the decedent's wounds and lacerations.
Taking the prejudicial nature of these pictures into account, Kelly v. State, 463 So.2d 1070 (Miss. 1985) states, "This Court has repeatedly held that the fact that a photograph of the deceased in a homicide case might arouse the emotions of the jurors, does not of itself render it incompetent evidence as long as its introduction serves some useful evidentiary purpose." Id. at 1074. Although a pre-rule case, this rationale is applicable here.
Stevens v. State, 458 So.2d 726 (Miss. 1984) reinforces this Court's view on photographs. Stevens, as well as the case sub judice, involves a very similar factual situation. In Stevens, this Court held:
In the case sub judice, the trial court was of the opinion that photographs were probative on the issue of the manner of death. In addition, the photographs tended to corroborate the use of a firepoker as the murder weapon and established both the multiplicity of blows administered and the extent of force and violence used.
458 So.2d at 729. Along these lines, the photographs in the case at bar show the extent of the decedent's "surface" injuries. Therefore, they are essential to the main issue in the case; and this Court holds that the photo introduction serves a useful evidentiary purpose. This Court holds no error in their admission.

III.

DID THE TRIAL COURT ERR IN ADMITTING APPELLANT'S ORAL AND WRITTEN STATEMENTS INTO EVIDENCE?
Counsel for the State introduced three statements made by the appellant to law enforcement officers.
In approaching the admissibility of the preceding statements, the common thread among all these is whether these statements were voluntary. In other words, did the accused effectively waive her Miranda warnings? In Neal v. State, 451 So.2d 743, (Miss. 1984) this Court held:
We emphasize that the mere giving of the Miranda warnings, no matter how meticulous, no matter how often repeated, does not render admissible any inculpatory statement thereafter given by the accused. The rights of which the *389 accused is Miranda-warned must thereafter be waived  intelligently, knowingly and voluntarily. Whether there has been an intelligent, knowing and voluntary waiver is essentially a factual inquiry to be determined by the trial judge from the totality of the circumstances.
Neal, 451 So.2d at 753.
Keeping this rationale in mind, this Court must determine whether Mrs. Kniep made an intelligent, voluntary waiver of her Miranda rights. Mrs. Kniep's counsel claims that she was emotionally distraught, intoxicated, and in a confused mental state and could not have made an intelligent waiver of her rights.
With respect to the effect of intoxication on the voluntariness of a confession, this Court addresses that particular issue in Stevens, supra. Citing State v. Williams, 208 So.2d 172, 175 (Miss. 1968), this Court held that "... where the defendant was in an acute, rampant state of intoxication equivalent to mania, any waiver of constitutional right could not be voluntary and intentional and the defendant's statement should be excluded." Stevens, 458 So.2d at 729. With this rationale in mind, this Court holds that the condition of Mrs. Kniep at the time of the statement, according to the hospital witness, does not meet the standards set out in Stevens. The nurse said that she noticed an odor of alcohol on Mrs. Kniep's breath, but nonetheless, the nurse opined that Mrs. Kniep appeared to know what she was doing and what she was talking about.
Ultimately, the test in all cases remains, "After all of the Miranda warnings have been given and rights articulated therein respected, has there been under `the totality of the circumstances' a knowing and voluntary waiver of the accused privilege against self-incrimination?" Jones v. State, 461 So.2d 686, 696 (Miss. 1984). Along these lines, this Court in Jones also writes, "The State has the burden of proving all facts prerequisite to admissibility beyond a reasonable doubt." Id. at 697. Under the totality of this record, this Court upholds the trial judge's determination that the defendant's statements were freely, intelligently and voluntarily given and therefore admissible into evidence."

IV.

DID THE TRIAL COURT ERR IN ADMITTING INTO EVIDENCE THE PHYSICAL ITEMS FOUND AT THE SCENE OF THE DECEDENT'S DEATH?
The warrantless search of Mrs. Kniep's trailer yielded ten items of evidence: a tan coat, a pair of pajama bottoms, a clawhammer, two pieces of a wooden handle, a pair of blue pants, a t-shirt, a towel, a pair of jockey style shorts, a wash rag and a pair of socks. Due to the fact that these items were bloodstained, counsel for Mrs. Kniep asserts that this evidence was inflammatory in nature.
In support of this argument, Mrs. Kniep cites Overstreet v. State, 369 So.2d 275 (Miss. 1979). In Overstreet, this Court, citing Tudor v. State, 299 So.2d 682 (Miss. 1974), explains "We have recently held a presumption of reversible error is created by the introduction of evidence inflammatory in nature, but that the presumption can be negated when it can be said with confidence that no harmful effect resulted." Id. at 277. Applying this rule in Overstreet, appellant argues that there was no identification that this was the decedent's blood.
This Court in Overstreet also cautions, "the balancing of inflammatory characteristics versus probative value is logically dependent upon the relevancy of the evidence." Overstreet, supra. In balancing these factors in this case, this Court must keep in mind the central issue of fact. More specifically, the jury had to decide whether the deceased died as a result of isopropyl alcohol or as the result of criminal agency. Therein, the State argues that these items contained probative value in establishing the cause of death.
Considering the fact that these ten items are directly linked to the central issue (the cause of death), this Court finds no error on the part of the trial judge in their admission.

*390 V.

DID THE TRIAL COURT ERR (A) IN ALLOWING THE INTRODUCTION INTO EVIDENCE OF ONLY A PORTION OF THE AUTOPSY REPORT OF THE STATE MEDICAL EXAMINER AND (B) IN REFUSING TO ALLOW THE STATE MEDICAL EXAMINER TO GIVE HIS OPINION THAT THE DEATH WAS DUE TO ACCIDENTAL POISONING BY THE INGESTION OF ISOPROPYL OR RUBBING ALCOHOL?

A.
At trial, Mrs. Kniep's counsel attempted to introduce into evidence at various stages of the trial the complete autopsy report of her witness, Dr. Thomas Bennett, the medical examiner for the State of Mississippi. Each and every attempt by Mrs. Kniep to introduce this document or the findings thereof into evidence was refused by the trial court on the ground that the witness was present to testify. Weeks v. State, 493 So.2d 1280 (Miss. 1986). The trial court further refused Mrs. Kniep's counsel the right to have the autopsy report marked for identification purposes only.
Thereafter, during the State's cross-examination of Dr. Thomas Bennett, the district attorney offered into evidence one page of the autopsy report that contained drawings and notes by Dr. Thomas Bennett on the cuts, bruises, and wounds of the decedent, Richard Kniep. This one page, which was supportive of the State's position as to the cause of death and which was prepared by Dr. Bennett as part of his autopsy report, was admitted into evidence.
Thereafter, defense counsel moved the trial court to allow into evidence the remaining portions of the autopsy report under Rule 106 of the Mississippi Rules of Evidence. Nonetheless, the trial court overruled the motion by Mrs. Kniep's counsel.
Counsel for Mrs. Kniep asserts that the trial court committed reversible error by refusing to allow into evidence the remaining portions of the autopsy report which would be supportive of the defense's position that the cause of death was accidental. Counsel bases this argument on Rule 106 of the Mississippi Rules of Evidence. Rule 106 of the Mississippi Rules of Evidence states:
When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.
In reviewing the comment of Rule 106, it is noted that this rule is a codification of the common law doctrine of completeness. The comment also specifies that the rule attempts to prevent the misleading of the jury by taking evidence out of context.
In deciding whether the lower court interpreted Rule 106 correctly, this Court again turns to the central issue of the case at bar. That central issue, the cause of death, is a factual issue for the jury to decide. Reviewing the record, one discovers that the testimony of Dr. Thomas Bennett, medical examiner for the State of Mississippi, contained critical information in connection with Mr. Kniep's cause of death. According to Bennett's testimony, none of the wounds severed any major artery or internal organ.
However, Dr. Bennett's testimony reveals that the level of isopropyl alcohol in the deceased's blood was .34 percent, which would translate to about a .68 percent grain alcohol level. A grain alcohol reading of .35 or .4 causes death.
Obviously, the jury received testimony from Dr. Bennett concerning both the extent of the wounds and the effect of the alcohol. However, the jury was only permitted to see a portion of the autopsy report which bolstered the State's contention as to the cause of death. Rule 106 of the Mississippi Rules of Evidence is to avoid misleading the factfinder by introducing only a fragment of an utterance out of context. Therein, a mistake is made in introducing into evidence one page from the autopsy report. The results of this *391 mistake is that the jury only sees the findings from the autopsy report as to the State's position. Due to the fact that the diagram portion of that statement was taken out of context of the true findings in the report, the jury is misled by the findings of that portion of the report. Abiding by a fair interpretation of Rule 106, the rule mandates, "any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."
Mrs. Kniep was prejudiced by being denied the opportunity to present the remainder of the autopsy report. Therefore, this Court holds that the trial court committed reversible error in refusing to allow the whole autopsy into evidence.

B.
Counsel for Mrs. Kniep submits that the trial court erred in refusing to allow Dr. Thomas Bennett, the state medical examiner, to give his opinion that the manner of the death of Richard Kniep was due to the accidental ingestion of isopropyl alcohol. Mrs. Kniep predicates this argument on the Rules of Evidence Rule 702 and Rule 704. If this testimony was allowed under these rules, appellant contends that this testimony would show Richard Kniep was accidentally poisoned of his own accord.
To counter this argument, the State asserts that Dr. Bennett's opinion that the deceased's death occurred accidentally was not a matter within his knowledge or his expertise.
To resolve this matter, one must review Rule 702 and Rule 704. Rule 702 states:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
See also House v. State, 445 So.2d 815 (Miss. 1984). Lang v. Texas & Pacific R. Co., 624 F.2d 1275 (1980), note 10. Dr. Bennett, as state medical examiner, is highly qualified in his field. The State, realizing these qualifications, stipulated to his expertise. Nonetheless, the question remains whether Dr. Bennett should have been allowed to give opinion testimony as to the ultimate issue whether death of this deceased was murder or accidental by self infliction.
For this query, Rule 704 of the Mississippi Rules of Evidence is helpful. As to opinion and expert testimony, Rule 704 states, "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." For a better understanding of Rule 704, the comment states, "Rule 704 abolishes the `ultimate issue rule' which existed in Pre-Rule Mississippi Practice... . An opinion is no longer objectionable solely on the grounds that it `invades the province of the jury.'" As a predicate to such opinion, the comment to Rule 704 explains that under 701 and 702 that the absolute requirement for opinion testimony of experts to be admitted into evidence is that it must be helpful to a determination of the case. Advisory Committee Notes on Federal Rules 704.
With these rules in mind, Dr. Thomas Bennett could certainly give his expert opinion that the cause of death was due to Richard Kniep's ingestion of rubbing alcohol. This testimony is grounded in Dr. Bennett's discoveries in the autopsy report, which were findings not available to Dr. Moody, the general practitioner. See Johnson v. Ferguson 435 So.2d 1191 (Miss. 1983). Further from these findings, Dr. Bennett could give his opinion that the death of the decedent was accidental due to the ingestion of isopropyl alcohol (rubbing alcohol). Therein, these opinions would have been helpful to the jury in determining that Mr. Kniep drank the rubbing alcohol of his own accord, that Delois Kniep was not responsible for his actions, and that she was not guilty of murder.
Reconsidering the Rules 702 and 704, this Court holds that the testimony of Dr. Bennett should have been admitted.

*392 VI.

DID THE TRIAL COURT ERR BY REFUSING TO GIVE APPELLANT'S INSTRUCTION NO. 1?
Mrs. Kniep submits to this Court that it was reversible error for the trial court to refuse to grant a circumstantial evidence instruction.
In Keys v. State, 478 So.2d 266 (Miss. 1985), this Court explained the procedure behind a circumstantial evidence instruction.
It is the law in this state that, where the evidence for the prosecution is wholly circumstantial in nature, the accused is entitled upon request to have the jury instructed that, before they may convict, they must find that each element of the offense has been established beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence.
Id. at 267. With this rationale in mind, the opinion cautioned, "There is, to be sure, loose talk in some cases to the effect that the circumstantial evidence instruction must be given where only one of the elements of the offense charged is established circumstantial." Id. The opinion continues, "A correct statement is that the instruction must be given only where the prosecution is without a confession and wholly without eyewitnesses to the gravamen of the offense charged." Id. With the proper admission of the appellant's confession, the court properly concluded that the evidence was not wholly circumstantial and refused a circumstantial evidence instruction.
The Court holds that the trial court committed reversible error by refusing to allow into evidence the remaining portions of the autopsy report under Rule 106 of the Mississippi Rules of Evidence and by refusal of Dr. Bennett's expert opinion as to the ultimate fact of death.
REVERSED AND REMANDED FOR A NEW TRIAL.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN and ZUCCARO, JJ., concur.
HAWKINS, P.J., specially concurs.
GRIFFIN and ANDERSON, JJ., dissent.
HAWKINS, Presiding Justice, specially concurring:
I concur in the reversal of this case because of the Rule 106 violation of the Mississippi Rules of Evidence. Aside from this rule, it is fundamental that when a witness testifies from his records or notes, the opposing side on cross-examination has the right to question him about his entire file, and to offer the entire file into evidence, insofar as it is relevant.
In my view, however, the circuit judge did not err in refusing to permit the defense, when it called Dr. Bennett to the stand as its witness, to on its own offer his notes and record from which he had testified into evidence.
Nor, did the circuit judge err in refusing to permit Dr. Bennett to testify that in his opinion the decedent accidentally drank the rubbing alcohol. It was proper, of course, for this expert to express the opinion that the cause of death was the alcohol. But, that he took it by accident is a conjecture, no more and no less, and Dr. Bennett was in no better position to speculate about this than anybody else.
GRIFFIN, Justice, dissenting:
The majority opinion states that two errors require reversal of Kniep's conviction: (1) a violation of Miss.R.Evid. 106, and (2) improper exclusion of expert testimony. Believing that neither was error, I respectfully dissent.
At several points during the trial, defense counsel attempted to introduce the autopsy report prepared by Thomas Bennett, M.D. Because Bennett was present to testify, the trial court refused to admit his report into evidence. The trial court did, however, allow Dr. Bennett to testify as to the contents of the report. When the *393 State later attempted to introduce into evidence a diagram attached to Bennett's written report, the trial court admitted the diagram. At that point, defense counsel again attempted to introduce the remainder of the report, arguing that it was admissible under Miss.R.Evid. 106, which provides that
[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing which ought in fairness to be considered contemporaneously with it.
The trial court still refused to admit the remainder of the report. That ruling, according to the majority, constituted reversible error.
Rule 106, by its own terms, applies only to written or recorded statements. Indeed, the common law doctrine which the rule embodies is often referred to as the Rule of Verbal Completeness. 7 Wigmore, Evidence 3d ed. §§ 2097-2125 (1940), Louisell and Mueller, Federal Evid. § 49 (1977). The document which was admitted into evidence in the instant case was a diagram depicting the knife wounds suffered by the deceased. Admission of a diagram does not require, under Rule 106, that a separate written statement be admitted. Moreover, the autopsy report and the diagram attached to it were not integral parts of a single statement. The diagram was simply an attachment which illustrated the report. I believe it was properly admitted.
Assuming, arguendo, that the report was admissible. Where is the prejudice? The doctor was allowed to tell everything that he had in the report. The jury had before it all that was in the report and more, too. The State had a doctor to testify without offering a report. Why bolster Dr. Bennett's testimony by allowing the jury to read his report? As far as we know such a reading may have hurt the defense. Error, if any, was harmless.
The majority also holds that the trial court improperly excluded opinion testimony of an expert. The issue, as phrased by the majority, is "whether Dr. Bennett should have been allowed to give opinion testimony as to the ultimate issue whether death of this deceased was murder or accidental by self-infliction." Majority opinion, pp. 390-391. In deciding this issue, the majority considers Miss.R.Evid. 704, which provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Relying on this rule, the majority concludes that Bennett should have been allowed to testify that the death was accidental.
Although Rule 704, as the majority notes, abolishes the "ultimate issue rule," we have held in cases construing Rule 704 that opinion testimony embracing an ultimate issue, though no longer inadmissible per se, should still be excluded if it is not helpful to the trier of fact. Hughes v. Tupelo Oil Co., Inc., 510 So.2d 502 (Miss. 1987); Dale v. Bridges, 507 So.2d 375 (Miss. 1987). In Dale the Court stated, "Questions which simply allow the witness to tell the jury what result to reach are impermissible, as are questions asking the witness for a legal conclusion." Dale, 507 So.2d at 378. Because Bennett's testimony would simply have told the jury what result to reach, it was properly excluded. In addition, I am not persuaded that Dr. Bennett was qualified to state that the death was accidental. The doctor was allowed to give an opinion that the deceased died from drinking rubbing alcohol. How could he conclude this was an accident? Dr. Bennett is a pathologist, not an accidentologist.
I would affirm the conviction.
ANDERSON, J., joins this dissent.