755 So.2d 1217 (1999)
Patrick Michael MILLIORN, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00940-COA.
Court of Appeals of Mississippi.
August 17, 1999.
*1219 Cynthia Ann Stewart, Jackson, Attorney for Appellant.
Office of the Attorney General by Charles W. Maris Jr., Attorney for appellee.

MODIFIED OPINION ON MOTION FOR REHEARING
SOUTHWICK, J., for the Court:
¶ 1. The original opinion is withdrawn and this opinion substituted on rehearing. The motion for rehearing is denied. Patrick Milliorn was convicted by a Scott County Circuit Court jury of possession of more than one kilogram of marijuana with the intent to distribute. On appeal he argues that he was arrested without probable cause, that a search violated his constitutional rights, and that his resulting confession was tainted by the preceding illegality. We disagree with his assertions and affirm.

THE FACTS
¶ 2. On January 23, 1994, Highway Patrol Officer Walter Davis stopped Patrick Milliorn in Scott County for speeding. Milliorn gave the officer his New Mexico driver's license and the rental papers for the car which he was driving. At the window of Milliorn's vehicle, the officer noticed the odor of alcohol coming from within. He asked Milliorn to take a hand held breathalizer test. Milliorn complied. He registered .04 on the test, which indicates no illegal intoxication
¶ 3. The officer observed a pair of pants and a suit coat hanging in the back seat of Milliorn's vehicle. He questioned Milliorn about the contents of the trunk and whether or not he had any additional luggage. Milliorn responded that he did not have any additional luggage and that he had not been into the trunk. What happens next is in dispute. The differing factual accounts regarding whether there was consent to search and when Milliorn was arrested and for what offense, will be discussed under the issues to which those facts relate. At this time it is enough to say that the trunk of Milliorn's vehicle was opened and inside were several large plastic bags which were later determined to contain marijuana. The officer handcuffed Milliorn and placed him inside his patrol car. He was then informed of his constitutional rights arising from this arrest.
¶ 4. At the police station, officer Leonard Harrison of the Mississippi Bureau of Narcotics again informed Milliorn of his constitutional rights and then took a statement. Harrison's testimony at trial revealed only one potentially incriminating admission, which was that Milliorn refused to assist in arresting others since he was going to jail regardless.

DISCUSSION

1. Probable cause to arrest Milliorn
¶ 5. Milliorn's counsel filed a motion to suppress on October 6, 1995, almost two years before the trial commenced on *1220 June 18, 1997. The motion alleged that the officer did not have probable cause to stop Milliorn, that the stop was pretextual, that Milliorn was improperly detained, and that the search of the vehicle violated the defendant's constitutional rights. There is no record of a hearing on the motion until after the arresting officer had testified at the 1997 trial and a second officer had begun his testimony. On rehearing Milliorn's counsel argues that the practice of this circuit judge is to await trial to hear motions to suppress. We accept the assertion as accurate, but that does not relieve counsel of bringing the suppression matter to the court's attention prior to or at the time that any challenged evidence is introduced, or else making an objection to that evidence. Admitting evidence addressed in a pending suppression motion that has not been brought on for hearing preserves no allegation of error, absent an objection lodged at the time.
¶ 6. The arresting officer testified first without objection that after Milliorn took the breathalyzer test and while both were seated in the police car, the officer asked if he could look inside the trunk of Milliorn's rental car. The officer testified that Milliorn said that he did not care. Milliorn at the subsequent suppression hearing denied that he gave the officer his consent to search the vehicle.
¶ 7. The officer asked Milliorn to get out of the patrol car and walk over to the vehicle with him. At that point, the officer took the keys out of the ignition and attempted to open the trunk with them. When that was unsuccessful, the officer noticed that Milliorn put his hands inside his front pockets. It was not until that moment that the officer had any concerns about his safety. Thereafter, he asked Milliorn to put his hands on the car, and the officer proceeded to conduct a pat down. The pat down revealed a large, double folding pocket knife. At that point, Officer Davis informed Milliorn that he was under arrest. Presumably that was based on having a concealed weapon, though Milliorn was not subsequently charged with that. However, in short order much happened to change the investigation. Milliorn then suggested to the officer that he could open the trunk using a button inside the car. The button did in fact open the trunk. Seven plastic bags were then discovered that were later found to weigh over 200 pounds.
¶ 8. All of the foregoing was admitted without objection. The officer was not allowed to state that the plastic bags appeared to contain marijuana. A witness from the state crime lab later made the identification.
¶ 9. When the second officer began to testify about a statement made by Milliorn at the police station, the court stopped the proceedings without any defense objection and asked that the jury retire from the courtroom. Perhaps this course was earlier established off the record by agreement of the judge and counsel. Counsel on rehearing states as much. The judge stated that the jury was excused in order "to explore the admissibility of the statement." The officer was Leonard Harrison. The State questioned him on the taking of the statement and tried to show that it was voluntarily given after adequate warnings of constitutional rights. Milliorn was then called as well. His testimony went far beyond just the hearing on the admissibility of the police station statement, but also addressed the events at the roadside when the marijuana was first discovered.
¶ 10. When all the testimony on suppression was concluded, Milliorn's attorney argued that the permissible scope of a search incident to a traffic stop was exceeded, and that everything else that followed including the statement at the police station was a product of that illegality. The court found that the stop and the search were lawful, and that the statement was voluntarily given.
*1221 ¶ 11. The specific question in this first issue is whether the arrest was unlawful. The search is discussed in two subsequent issues. At this hearing the defense argued that the statement was the fruit of an illegal search incident to arrest, not that the arrest itself was improper. The court never made a ruling on the propriety of the arrest as he was not asked to do so.
¶ 12. A party is obligated to seek a ruling on an objection or motion. "Our rule is that a party making a motion must `follow up that action by bringing it to the attention of the judge and by requesting a hearing upon it.' Sharplin v. State, 357 So.2d 940, 942 (Miss.1978). It `is the responsibility of the movant to obtain a ruling from the court on motions filed by him, and failure to do so constitutes a waiver of same.' Martin v. State, 354 So.2d 1114, 1119 (Miss.1978)." Billiot v. State, 454 So.2d 445, 456 (Miss.1984). If this interruption in the trial proceedings is taken as a consideration of the motion to suppress, which included an attack on the arrest, no ruling on that portion of the motion was made. Similarly, failure to offer a contemporaneous objection at trial results in a waiver of the matter for appellate review. Stevens v. State, 458 So.2d 726, 730 (Miss. 1984). This rule applies to Fourth Amendment claims. Id. The trial court was not asked to rule on the issue of probable cause for Milliorn's arrest. We therefore hold that this issue was not properly preserved for our review. The possible bases for arrest, including whether the knife discovered in Milliorn's pocket was a concealed weapon under Mississippi Code Section 97-37-1, or whether the subsequent discovery of marijuana through a consensual search cured any possible invalidity in the initial arrest, and all the facts necessary to analyze those possibilities, are simply not in the record.

2. Validity of search and seizure
¶ 13. Where an unreasonable search and seizure is conducted, no evidence obtained, no matter how probative of guilt of the accused, may be introduced at the trial of the defendant. Jackson v. State, 418 So.2d 827, 829 (Miss.1982). The supreme court has noted that the "Fourth Amendment's rule against warrantless searches is subject to a few specifically established and well-delineated exceptions." Graves v. State, 708 So.2d 858 (Miss.1997) (quoting Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). Among the most important exceptions is the consent of the person with control over the premises to be searched, Townsend v. State, 681 So.2d 497, 501 (Miss.1996). The totality of the relevant circumstances must be examined in determining whether consent was voluntarily made, a decision initially for the trial judge who is best able to adjudge the credibility of those testifying. Jones v. State, 607 So.2d 23, 28 (Miss.1991). When the testimony on the issue is conflicting, as indeed it usually is, the trial court is the principal evaluator of credibility. Id.
¶ 14. Milliorn advances two arguments in this regard. First, he asserts that if the search was incident to his arrest, the search was invalid because the arrest was unlawful for being without probable cause. Secondly, Milliorn contends that he did not give his consent to the search making it unlawful and the fruits of the search inadmissible at trial.
¶ 15. This is the trial court's ruling on the motion:
Officer Davis testified that on this occasion, he stopped the Defendant for the traffic violation of speeding, and then he testified regarding the circumstances incident to the investigation of the speeding offense. It all led to the search of the vehicle, and in my opinion, it was a lawful stop and a legal search.
The court relied on the statements of Officer Davis, who had testified that the stop occurred because of speeding, that the arrest *1222 occurred initially because of the discovery of the knife, and that Milliorn consented to the search. We must determine, if that evidence is accepted as the most credible, whether it is sufficient to sustain the search.
¶ 16. We first note that Davis, who was the arresting officer, informed the jury of all of his actions without objection except when he was asked to identify what he found. Does a failure to object to testimony that describes the steps of an allegedly unconstitutional search waive the objection to what was found, or is it only when the result of the search is being introduced into evidence that the objection must be lodged? It would appear in the absence of any case law that we have discovered, that there is no obligation on a defendant's part to object to each misstep by an investigating officer when the impropriety is not itself incriminating to the accused. Therefore, even if Milliorn is correct that the arresting officer did not have authority to search his trunk, the fact that a search occurred is not incriminating. Only when the officer started to say that marijuana was discovered was there an objection. Counsel did not state whether the objection was based on the expertise of the officer or on the alleged illegality of the search, but it was sustained all the same. We find no waiver by the fact that the arresting officer testified without objection as to the mechanics of the search.
¶ 17. The United States Supreme Court has held that the test for the validity of consent to a search is a fact question of voluntariness, a matter to be determined by the totality of the circumstances. Ohio v. Robinette, 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). The Robinette Court ruled that police officers do not have to inform detainees that they are free to go prior to questioning or obtaining their consent to a search. Id. For a time this State had a contrary rule, that an accused must be shown to have knowledge of a right to refuse consent. Penick v. State, 440 So.2d 547, 549-50 (Miss.1983). The Penick rule has been modified. The prosecution need not show knowledgeable consent but rather the burden is on the accused to establish diminished capacity to consent. Jones, 607 So.2d at 28. No such issue was raised in this case.
¶ 18. Under the totality of the circumstances, the trial court accepted the testimony of the arresting officer as to consent. The question of consent is a factual one to be decided based on conflicting evidence by the trial judge. Id. Here, he concluded that Milliorn in fact gave his consent to the search. On appeal Milliorn argues both that the officer should not be believed, and also that the consent as a matter of law was involuntary because it was given after an illegal arrest.
¶ 19. As to which witnesses to believe, the trial court chose officer Davis and that was within his discretion. As to the effect of the arrest, we note that Davis testified that Milliorn immediately after the breath test and before the arrest stated that he did not care if a search was conducted. The search was being attempted when Milliorn's placing of his hands in his pockets caused a frisk for weapons to be made. The arrest that then occurred, after consent to search but before the search was concluded, did not end the effectiveness of the consent.
¶ 20. The trial court did not err in upholding the search.

3. Milliorn's statement to Officer Harrison
¶ 21. The determination of whether a confession was freely and voluntarily given is a finding of fact for the trial court, with the burden of proof upon the State. Layne v. State, 542 So.2d 237, 239 (Miss.1989). The trial court must resolve *1223 "whether the accused has been adequately warned, and whether, under the totality of the circumstances, he has voluntarily and intelligently waived his privilege against self-incrimination." Id. The trial court's decision in this regard will not be disturbed unless the trial judge applied the wrong legal standard, committed manifest error, or the conclusion was contrary to the overwhelming weight of the evidence. Balfour v. State, 598 So.2d 731, 742 (Miss. 1992).
¶ 22. Milliorn argues that Officer Harrison's testimony regarding the statement he gave at the police station was improperly admitted into evidence because it was the "fruit of the poisonous tree," meaning that it was tainted by an illegal arrest. We have already found that the fruit resulting from the arrest was not poisoned, and thus this argument fails.
¶ 23. Milliorn makes no separate argument that anything after the arrest made the statement involuntary. The trial court specifically found that Milliorn was informed of his constitutional rights, that he understood them and made a knowing and intelligent waiver of his rights. The trial court applied the correct standard, was not manifestly in error, and the overwhelming weight of the evidence is not contrary to the trial court's decision.

4. Officer Harrison's testimony regarding drug trafficker's use of rental vehicles
¶ 24. Milliorn argues that Officer Harrison's testimony was inadmissible that it was common for cross-country drug carriers to use rental cars. Milliorn seeks to classify this testimony as "drug courier profile" evidence. The issue of the use of a drug courier profile as substantive evidence has bedeviled the courts, and Milliorn wants to visit such difficulties on this appeal. In that he fails.
¶ 25. The relevant testimony is this:
Q. [THE PROSECUTOR] ... are you familiar with the most common manner of transportation used by drug couriers in carrying large amounts of drugs across the county?
[DEFENSE COUNSEL]: Judge, I would object to the relevance of this testimony in this particular case. I, frankly, don't understand how this officer can testify to that. He is attempting to use him as sort of an expert witness based on that question, and I think that would be entirely improper.
BY THE COURT: Objection overruled.
Q. What would be the most common method of transportation?
A. [OFFICER HARRISON] And of the most common methods is rental vehicles.
Q. And, why would they use a rental vehicle?
A. Because if drugs are found in a vehicle belonging to the person, it would be subject to seizure.
Q. But, if the vehicle is owned by, say, a Hertz Corporation or something like that, are you able to seize it?
A. No, Sir. That would be an innocent owner type situation. We couldn't take it away from the leasing agency.
¶ 26. In permitting the jury as rational and accurate a view of an offense as possible, a broader picture is at times needed. "In the context of a drug case, that reasonably includes proof regarding the nature of the drug, the manner in which it is used, the effect it has upon the individual who uses it and related matters." Turner v. State, 478 So.2d 300, 301 (Miss.1985). Explaining to the jury why someone transporting drugs would use a rental car is similar to explaining why someone possessing crack cocaine with intent to distribute would need scales, razor blades, plastic bags, and other relatively *1224 innocent items. In an appeal regarding just such an offense, the testimony of an agent with the state Bureau of Narcotics was approved Kelly v. State, 553 So.2d 517, 521 (Miss.1989). The agent, who was not certified as an expert, was allowed to testify as to how rock cocaine is made and the items used in the process. The Mississippi Supreme Court ruled:
We find no error in the initial explanation of rock cocaine that was offered by the State through the witness Jackson [the narcotics officer]. Such an explanation was helpful to the jury in understanding the charge. We find, and so hold, it was error to allow the testimony of Jackson, a non-expert, who characterized the use of the physical evidence in the manufacture of rock cocaine. However, after examination of the record as a whole, we find that such error was harmless beyond a reasonable doubt.
Id. at 522.
¶ 27. In a different case regarding drug possession, but not with the intent to distribute as here, the supreme court found that the admission of similar testimony was harmless. Haddox v. State, 636 So.2d 1229, 1231 (Miss.1994). There an officer who was not certified as an expert, was permitted to testify that "based on his past experience in drug-related cases, weapons and money were typically associated with controlled substances crimes." Id. at 1232. The appellant argued that such testimony was expert testimony and that if the supreme court found that it was, it was error for the State to have failed to list the officer as expert witness prior to trial. Id. at 1238. The Mississippi Supreme Court ruled:
[W]e need not decide this evidentiary issue, for the admission of this testimony does not appear to have harmed the defendants' case. This testimony was offered primarily to promote the [S]tate's charge of intent to transfer. The question posed to Officer Vasillion was an inquiry into whether guns and money were associated with drug dealing, not mere possession.... In light of the entire record, this testimony was harmless in its effect upon the conviction of possession.
Id. at 1238.
¶ 28. On the other hand, when lengthy explanatory testimony regarding drugs was given by a police officer who was not qualified as an expert, reversal was the result. Ramos v. State, 710 So.2d 380, 387 (Miss.1998). In another case, reversal occurred because an officer who was not qualified as an expert testified about a typical marijuana user, the quantity normal for personal use, the street value of the drug, and its packaging. Sample v. State, 643 So.2d 524, 530-31 (Miss.1994). We find that it was error for the trial court to admit the officer's testimony about the manner in which drugs were often or normally transported across the country, but as in Haddox the principal problem was that the preliminary qualifying of the witness as an expert was not undertaken. The single statement that rental cars are frequently used is much more akin to Haddox and Kelly than to the more elaborate evidence from an improperly qualified witness in Sample and Ramos.
¶ 29. The error in this case was harmless.

5. Chain of custody of marijuana
¶ 30. Milliorn asserts that the marijuana was improperly allowed into evidence because the agent who retrieved the bundles of marijuana from the crime lab and delivered it to the trial court did not testify. The test for the continuous possession of evidence is a determination of "whether or not there is any indication or reasonable inference of probable tampering with the evidence or substitution of the evidence." Wells v. State, 604 So.2d 271, *1225 277 (Miss.1992). Additionally, the trial court is vested with sound discretion in determining any questions as to the chain of custody and possession of evidence. Thomas v. State, 711 So.2d 867, 871 (Miss. 1998). A strong presumption of validity accompanies actions of law enforcement officials with regard to preservation of evidence. Nixon v. State, 336 So.2d 742, 744 (Miss.1976).
¶ 31. Here, Officer Davis testified that he left the bundles he discovered in Milliorn's vehicle in the trunk. He radioed a tow truck to transport the car to the police station. Officer Davis stated the he followed the tow truck hauling Milliorn's vehicle, then confiscated the bundles, weighed them, and handed them over to Officer Harrison. Officer Davis stated that the marijuana weighed 231 pounds. Thereafter, Officer Harrison labeled the bundles and personally took them to his office in Meridian and signed them into their evidence room. The following day Harrison and another agent drove the bundles to the state crime lab. Harrison personally handed the bundles to forensic scientist, Grady Downy. Downy again labeled the marijuana, tested the marijuana, and stored the bundles at the crime lab until time for trial. Downy also testified that when he tested the drugs shortly after they were delivered, the total weight was 218 pounds and 15.5 ounces.
¶ 32. Officer Harrison testified at trial that he instructed an agent from his office to pick up the marijuana from the crime lab and deliver it to the trial court. Officer Harrison, Officer Davis and Downy all testified that the bundles of marijuana were in the same condition as they were in when each had control over them. The trial court was satisfied that the State had established a proper chain of custody of the marijuana and so ruled.
¶ 33. In this case the only suggestion of tampering is the difference in weight of thirteen pounds or 5% between the weight measured by Officer Davis and that calculated at the crime lab. There is no evidence regarding the accuracy of the scales used by either Officer Davis or the crime lab. Such a small discrepancy does not indicate tampering that would affect a substantial right of the defendant. The trial court did not abuse its discretion in finding that the chain of custody was complete.
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF SCOTT COUNTY OF POSSESSION OF MORE THAN ONE KILOGRAM OF MARIJUANA WITH INTENT TO DISTRIBUTE AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $20,000 IS AFFIRMED. SENTENCE TO RUN CONSECUTIVELY TO ANY PREVIOUS SENTENCES. ALL COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, DIAZ, LEE, PAYNE, and THOMAS, JJ., concur.
IRVING, J., concurs in result only.
MOORE, J., not participating.