Frances Haven Hughes, mother of Ronald Wayne Haven, deceased, filed a wrongful death action against Tupelo Oil Company, Inc. (Tupelo Oil), and its employee Eddy Brown. At the conclusion of trial in the Circuit Court of DeSoto County, the jury returned a verdict for the defendants. From a judgment entered pursuant to that verdict, Hughes appeals, and Tupelo Oil and Brown cross-appeal. We reverse and remand on both direct appeal and cross-appeal.
Ronald Wayne Haven, second child of Frances Haven, was born on December 10, 1963. Before Ronald reached his second birthday, his father died. Ten (10) years later, Ronald's mother remarried.
Ronald dropped out of school during the eleventh grade. He went to work for Gem, Incorporated, and left the home of his mother and stepfather to live with his older sister Mary and her husband. Because Ronald worked the 3:00 p.m. to 11:00 p.m. shift, he seldom saw Mary, who worked days. He did, however, help care for Mary's six-year-old son, and he became close friends with Mary's husband, Butch.
On the evening of February 11, 1983, Ronald was working at Gem, Incorporated. He spent his 7:00 p.m. supper break at the Wagon Wheel Restaurant, as was his custom. Later that evening, between 10:00 p.m. and 11:00 p.m., Ronald returned to the Wagon Wheel. Gloria Turner, whose family owned the restaurant, saw Ronald and believed he had been drinking.
As Ronald left the Wagon Wheel he happened upon his younger brother Allen, who was about to ride to Memphis with a friend. Ronald went along for the ride and drank from a bottle of gin during the trip. After returning from Memphis, Ronald and Allen went to the Hughes home, where Allen lived with the boys' mother and stepfather. Allen went to bed, and Ronald went into the bedroom of his younger sister Ann. He awakened her, and the two discussed an upcoming concert in Memphis. Then Allen asked Ann to go with him the following day to purchase a Valentine's Day present for their mother. When Ann expressed concern about not having enough money, Ronald assured her he would pay for the gift. Ronald then kissed his sister, said he would see her the next day, and left. *Page 504 
At approximately 1:00 a.m. Ronald entered the Wagon Wheel Restaurant for the third time that night. Gloria Turner, with whom Ronald often talked during his visits to the restaurant, saw him stumble as he walked through the door. She believed he was intoxicated. Concerned, she offered to call his mother, but Ronald stated there was "no way he was going there." The two talked for some time, and during the course of the conversation Ronald complained that his stepfather was "mean" to him. In apparent despair, he told Gloria that he was "tired of the drinking and beating," and that he would rather be dead than go on living the way he was living.
Shortly before 2:00 a.m. on that same night, Eddy Brown, an employee of Tupelo Oil Company, was driving from Tupelo, Mississippi, to West Memphis, Arkansas, in an eighteen-wheel truck. The weather was clear as Brown travelled west on Highway 78. Monitoring the citizens' band radio, Brown heard a report that there was "someone in the road" ahead. Brown reduced his speed until he passed the area where the pedestrian had been sighted. He then began to regain speed, and he dimmed his lights for oncoming eastbound traffic, continuing to look for the pedestrian.
Then Eddy Brown saw Ronald Wayne Haven running straight toward him down the center line of the highway. Brown, the only witness to what occurred next, testified as follows. Because there was a steep slope on the right shoulder, Brown swerved to the left to avoid Ronald. When Brown swerved, however, Ronald changed his path and again ran directly toward the oncoming truck. Brown then cut sharply to the right in a final attempt to avoid the boy. The effort was in vain. The tractor-trailer struck the boy and then jack-knifed. Ronald Wayne Haven was found dead on the steep slope to the right of the highway. He was nineteen (19).
Frances Haven Hughes filed a wrongful death action alleging negligence. Named as defendants were Brown and Tupelo Oil Company. At trial, Hughes called Brown as an adverse witness and elicited the following: 1) that Brown, who was driving with his lights on dim at the time of the accident, was travelling at such a speed that he could not stop within the range of his headlights, and 2) that Brown did not brake when he first saw Ronald. By way of defense, Brown and Tupelo Oil Company attempted to prove that Ronald committed suicide by deliberately running into the path of the oncoming truck. The jury returned a verdict for the defendants.
Hughes appeals, assigning as error the admission, over objection, of the investigating officer's testimony that no traffic citation was issued to Brown as a result of the incident. The admission of this testimony was reversible error. It allowed defense counsel to put on circumstantial evidence of the officer's opinion as to the ultimate issue — liability. No doubt, defense counsel was attempting to persuade the jury to reason as follows: since the officer did not cite Brown, he must not have been at fault; since he was not at fault, he cannot be held liable. Such testimony is inadmissible. South Central BellTelephone Co. v. Parker, 491 So.2d 212, 214 (Miss. 1986); WestCash and Carry Bldg. Materials v. Palumbo, 371 So.2d 873, 877-78 (Miss. 1979); Miss. Code Ann. § 63-15-23. See also Miss.R.Evid. 701 and 704 (effective January 1, 1986) (opinion on ultimate issue, though not inadmissible per se, is nevertheless inadmissible if not helpful to trier of fact).
On cross-appeal, Brown and Tupelo Oil Company raise two (2) evidentiary questions. Because the Mississippi Rules of Evidence will be applicable on remand, we base our analysis on those rules.
Brown and Tupelo Oil argue that the trial court erred in refusing to admit evidence that Ronald, two (2) or three (3) months before his death, had attempted suicide by lying down in the highway in the path of a truck. The trial judge excluded the evidence as being too remote. Miss.R. Evid. 403 provides that relevant evidence may be excluded if its probative value issubstantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of *Page 505 
undue delay, waste of time, or needless presentation of cumulative evidence. These factors are to be weighed by the trial court, whose determination of admissibility will not be disturbed on appeal absent an abuse of discretion. In our opinion, evidence of the attempted suicide should have been admitted into evidence under the facts of this case.
Finally, Brown and Tupelo Oil Company argue that the trial court erred in refusing to admit evidence that Ronald's blood alcohol content, tested at the request of the investigating officer, was .15%. The trial court excluded the evidence, ruling that the highway patrol officer had no authority to request the blood alcohol test. On appeal Hughes argues that the trial court properly excluded the evidence, based on Miss. Code Ann. §63-11-43 (1972), which prohibits admission, in a civil trial, of blood alcohol tests taken pursuant to the state's implied consent law. However, that statutory privilege has been abrogated by the adoption of Miss.R.Evid. 501. Therefore, Miss. Code Ann. §63-11-43 (1972) does not bar admission of the results of the blood alcohol test. We note, however, that the officer who requested the test did not have the authority to do so, since the implied consent law authorizes blood alcohol tests on dead or unconscious drivers whom the investigating officer believes to have been operating a motor vehicle while intoxicated. Miss. Code Ann. § 63-11-7 (1972). There being no evidence that Havens (the deceased) was operating a motor vehicle, the officer did not have the authority to order the blood test, and the trial court so found. Thus, we must determine whether evidence wrongfully obtained or obtained without proper authority is admissible in a civil trial.
In United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), the United States Supreme Court considered the admissibility, in a federal civil tax case, of wagering records unlawfully seized by a state law enforcement officer. The Court noted that "[i]n the complex and turbulent history of the [exclusionary] rule, the Court never has applied it to exclude evidence from a civil proceedings, federal or state." Janis,
428 U.S. at 447, 96 S.Ct. at 3029, 49 L.Ed.2d at 1057. Balancing the deterrent effect of the rule against the societal costs of excluding relevant and reliable evidence, the Court held exclusion of such evidence in federal civil proceedings was unwarranted.
In the case at bar, exclusion of this relevant evidence would have no deterrent effect, since the parties penalized would be Brown and Tupelo Oil, rather than the officer who ordered the unauthorized test. We make no determination of the admissibility of evidence obtained through the wrongful acts of the party seeking its admission, nor do we retreat from our holding that evidence seized by the State in violation of the state and federal constitutions is inadmissible in quasi-criminal proceedings. See, e.g., State for Use of Kemper County v.Brown, 219 Miss. 383, 68 So.2d 419 (1953). On remand, the results of the blood alcohol test should be admitted into evidence.
Because the trial court erred in admitting the officer's testimony that no traffic citation was issued, the judgment of the circuit court is reversed, and the cause is remanded for a new trial.
REVERSED AND REMANDED ON BOTH DIRECT APPEAL AND CROSS-APPEAL.
ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
DAN M. LEE, J., concurs in result only. *Page 506