United States Court of Appeals,

Fifth Circuit.

No. 92-7783.

James Everette CARROLL, Administrator of the Estate of Michael
Eugene Carroll on Behalf of All Heirs of Said Deceased, Plaintiff-
Appellant,

v.

Dr. John D. MORGAN, Defendant-Appellee.

March 31, 1994.

Appeal from the United States District Court for the Southern
District of Mississippi.

Before REAVLEY and DAVIS, Circuit Judges, and TRIMBLE[1], District
Judge.

W. EUGENE DAVIS, Circuit Judge.

In this medical malpractice action alleging wrongful death of
plaintiff-appellant's brother, the jury rendered a take-nothing
verdict in favor of the defendant doctor.  Finding no reversible
error, we affirm.

I.

On July 10, 1987, Dr. John D. Morgan, a physician specializing
in internal medicine, examined 30-year-old Michael Eugene Carroll.
Dr. Morgan had previously diagnosed Carroll in 1977 as having
aortic stenosis and, in 1980, Dr. Charles Lewis surgically replaced
Carroll's aortic valve.

During the July 10, 1987 examination, Carroll reported
dizziness, shortness of breath, inability to walk or stand,

---

[1]District Judge of the Western District of Louisiana,
sitting by designation.

numbness in his legs, and chest pain.  Dr. Morgan discovered a previously undetected heart murmur and diagnosed a "leaking aortic valve."  Dr. Morgan referred Carroll to Vocational Rehabilitation to arrange funding for a cardiological evaluation and testified that he advised Carroll not to return to work.  On July 17, 1987, seven days after Dr. Morgan examined Carroll but before Carroll's cardiological evaluation, Carroll died of congestive heart failure while operating heavy equipment at his place of employment.

James Carroll, the decedent's brother and estate administrator, brought this medical malpractice suit against Dr. Morgan for the wrongful death of his brother.  The plaintiff alleged that his brother died of bacterial endocarditis, a condition which Dr. Morgan should have detected and treated without delay on July 10, 1987.  The plaintiff maintained that Dr. Morgan was negligent in failing to refer his brother for immediate cardiological evaluation and that this negligence caused his brother's death.

Dr. Morgan's theory at trial was that Carroll did not exhibit signs of bacterial endocarditis during the July 10, 1987 examination.  Dr. Morgan therefore argued to the jury that he justifiably had no reason to suspect that Carroll required immediate medical attention.  Dr. Morgan also disputed the cause of death by presenting testimony that the pathological evidence did not conclusively establish that bacterial endocarditis caused Mr. Carroll's death.

Dr. Morgan primarily relied on the expert testimony of two

medical experts, Dr. Ken Bennett and Dr. Malcolm P. Taylor, to support his defensive theory that his treatment did not breach the standard of care owed under the circumstances. Both Dr. Bennett and Dr. Taylor testified that Mr. Carroll's July 10, 1987 examination did not indicate an urgent need for medical treatment. Both also testified that they would not have treated Carroll any differently under the circumstances. As to the cause of death, Dr. Bennett and Dr. Taylor testified that Carroll's death was possibly attributable to preexisting heart disease, a thickened heart, and the added burden of the leaking valve over the years.

The jury rendered a take-nothing verdict in favor of Dr. Morgan and the plaintiff's post-trial motions were denied. We consider below each of appellant's arguments.

II.

*A. DR. BENNETT'S TESTIMONY*

The appellant argues that the district court erred in a number of evidentiary rulings relating to the testimony of Dr. Ken Bennett, the defendant's expert cardiologist. First, the appellant challenges the admissibility of Dr. Bennett's testimony because Bennett failed to base his testimony on "a well-founded methodology" or on "generally accepted principles within the medical profession." Specifically, the appellant argues that Dr. Bennett's testimony should have been excluded because Dr. Bennett refused to recognize any medical textbooks or journal articles as authoritative on endocarditis.

When the plaintiff asked Dr. Bennett about several textbooks

3

and medical journals, Dr. Bennett responded that the publications included contributions from numerous authors; Dr. Bennett testified that he was therefore unwilling to recognize the materials in toto as authoritative and that he would not cite one particular source as the exclusive authority on endocarditis. The trial judge interpreted Dr. Bennett's testimony not as a categorical denouncement of widely recognized authorities on endocarditis, but rather as a reluctance to accept as authoritative the materials in their entirety and to accept one particular source as the exclusive authority on endocarditis.

A trial judge's decision to admit expert testimony will not be disturbed absent an abuse of discretion. E.g., *Shipp v. General Motors Corp.,* 750 F.2d 418 (5th Cir.1985). In this case, the trial judge did not abuse his wide discretion in allowing Dr. Bennett to testify as an expert in the field of cardiology. Moreover, the plaintiff does not allege that Dr. Bennett relied on a particularly objectionable or unconventional scientific theory or methodology. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* --- U.S. ----, ---- - ----, 113 S.Ct. 2786, 2796-97, 125 L.Ed.2d 469, 485 (1993). (holding that expert scientific testimony must be "ground[ed] in the methods and procedures of science" and based on "more than a subjective belief or unsupported speculation").

Because the district court did not abuse its discretion in interpreting Dr. Bennett's testimony with respect to the textbooks and journals, Dr. Bennett was qualified under *Daubert* to give an expert opinion on the standard of medical care owed to Carroll.

4

His testimony was based on thirty years of experience as a practicing, board-certified cardiologist, on his review, among other things, of Carroll's medical records and the coroner's records, and on a broad spectrum of published materials. His testimony was therefore "ground[ed] in the methods and procedures of science" and was not mere "unsupported speculation." *See id.* --- U.S. ----, 113 S.Ct. 2786, 125 L.Ed.2d at 482. That Bennett refused to base his testimony on a single medical textbook or journal article does not warrant wholesale exclusion of his testimony. In short, the trial judge did not commit manifest error in refusing to exclude Dr. Bennett's testimony on this ground.

The plaintiff argues next that the district court violated the teachings of *Daubert* in allowing Dr. Bennett to testify as to the cause of Carroll's death.[2] Essentially, the plaintiff argues that Dr. Bennett was not qualified to testify as to Carroll's cause of death because Dr. Bennett is not a pathologist.

*Daubert* does not support plaintiff's position that the subject of Carroll's cause of death falls within the exclusive confines of pathology. The district court did not abuse its discretion in allowing Dr. Bennett, an expert cardiologist, to give an opinion on the relationship between Mr. Carroll's heart problems and his death. *See, e.g., Karp v. Cooley,* 493 F.2d 408, 418 (5th Cir.1974) (cardiologist giving expert testimony as to cause of death). The plaintiff's argument that three testifying pathologists disagreed

---

[2]Dr. Bennett testified that in his opinion, Carroll's death was not attributable to endocarditis, but rather to preexisting cardiological problems.

5

with Dr. Bennett's opinion as to the cause of Carroll's death does not disqualify Bennett as an expert; the conflict among the expert testimony was grist for the jury.

The plaintiff also complains that the district court erred in refusing to allow the plaintiff to use certain medical textbooks and journal articles to cross-examine Dr. Bennett. Cross-examination of expert witnesses with published articles is permitted if the publication is "established as a reliable authority by the testimony or admission of the witness or *by other expert testimony*." Fed.R.Evid. 803(18) (emphasis added). Although Dr. Bennett refused to recognize the materials as authoritative, another medical expert, Dr. Charles McIntosh, recognized the authorities as reliable. The plaintiff therefore was entitled to use the publications to cross-examine Dr. Bennett. *See Dawsey v. Olin Corp.,* 782 F.2d 1254, 1264 (5th Cir.1986).

Such an error, however, does not automatically warrant reversal. Under Rule 103(a), appellate courts should reverse on the basis of erroneous evidentiary rulings only if a party's substantial rights are affected. *See Munn v. Algee,* 924 F.2d 568, 573 (5th Cir.1991). Moreover, the party asserting error based on erroneous rulings bears the burden of proving that the error was harmful. *E.g., Smith v. Wal-Mart Stores (No. 471),* 891 F.2d 1177 (5th Cir.1990). The plaintiff has failed to meet this burden. When Dr. Bennett declined to recognize the materials as authoritative, the plaintiff made no attempt to confront Dr. Bennett with specific passages in the publications and made no

6

offer of proof as to which portions of the publications conflicted with Dr. Bennett's testimony.  Appellant therefore has not carried his burden of demonstrating that the error was harmful.

*B. THE NEWHAVEN HOUSE RECORDS*

The plaintiff complains next that the district court erred in allowing Carroll's Newhaven House records into evidence.  In 1985, Mr. Carroll was admitted to the Newhaven House for treatment for drug and alcohol abuse.  Carroll's Newhaven House records contain references to Carroll's smoking, drinking, drug use, lustful sexual behavior, and marital infidelity.  The plaintiff argues that the records should have been excluded as they were not relevant and were highly prejudicial.

The district court did not err in admitting the Newhaven House records.  First, portions of the records were relevant to the possible causes of Carroll's death;  the defendant presented medical testimony that smoking and drug and alcohol use contributed to Carroll's severe coronary heart disease.  Dr. Bennett testified that "smoking contributes to coronary artery disease, and in this case I would have to say it had something to do with [coronary artery disease]."  Dr. Taylor testified that the decedent suffered from extremely advanced coronary artery disease and that smoking "most definitely" contributes to coronary artery disease.  Several treating physicians also testified that they had emphatically instructed Carroll to quit smoking because of his heart condition, but that Carroll had defied these instructions.

The Newhaven House records were also admissible on the issue

of damages.[3]  Dr. Morgan was entitled to show that Carroll was not a healthy person and that his intemperance might have resulted in a reduced life expectancy.  *See, e.g., Smith v. Southland Corp.,* 738 F.Supp. 923, 925-26 (E.D.Pa.1990);  *Pharr v. Anderson,* 436 So.2d 1357 (Miss.1983).  Moreover, evidence of marital discord is probative of the extent of the survivor's noneconomic loss as a result of the wrongful death.  *McGowan v. Estate of Wright,* 524 So.2d 308, 311 (Miss.1988).[4]

*C. THE PLAINTIFF'S POST-TRIAL MOTIONS*

Finally, the plaintiff asserts that the district court erred in denying his motions for a judgment as a matter of law or, in the alternative, his motion for a new trial.  A careful review of the record reveals that the jury's verdict is amply supported by the evidence.  *See Boeing Co. v. Shipman,* 411 F.2d 365, 374-75 (5th Cir.1969).  The jury apparently accepted the testimony of Dr. Morgan and his experts over the appellant's evidence.  Moreover, the trial court did not abuse its discretion in denying the plaintiff's motion for a new trial.  *See Bunch v. Walter,* 673 F.2d 127, 130 n. 4 (5th Cir.1982).

For the foregoing reasons, the judgment of the district court is

---

[3]The plaintiff did not request an instruction limiting this evidence to the issue of damages.

[4]After admitting the Newhaven House records, the district court allowed into evidence the plaintiff's answers to requests for admission based on matters taken from the Newhaven House records.  Although the evidence was cumulative, its admission was not so prejudicial as to require reversal.

AFFIRMED.