# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI

### NO. 96-CA-00692-COA

**ACCU-FAB & CONSTRUCTION, INC. AND ROY ANDERSON CORPORATION**   **APPELLANTS**

**v.**

**RICHARD G. LADNER, DECEASED, BY AND THROUGH BEVERLY LADNER, HIS WIDOW, AS HIS PERSONAL REPRESENTATIVE**   **APPELLEE**

**AND**

**EMPLOYERS INSURANCE OF WAUSAU**   **INTERVENOR**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/16/95 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | RAYMOND BROWN |
| | KELLY SESSOMS |
| | MICHAEL ULMER |
| | FRANK WOOD |
| | JAMES O. DUKES |
| ATTORNEYS FOR APPELLEE: | PAUL MINOR |
| | MARK LUMPKIN |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| TRIAL COURT DISPOSITION: | $2,000,000 VERDICT FOR WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED - 06/29/1999 |
| MOTION FOR REHEARING FILED: | 07/13/1999; AFFIRMED - 03/14/2000 |
| CERTIORARI FILED: | 3/27/2000; granted 6/22/2000 |
| MANDATE ISSUED: | |

### MODIFIED OPINION ON MOTION FOR REHEARING

EN BANC.

LEE, J., FOR THE COURT:

¶1. Each of the motions for rehearing filed in this matter are granted. The original opinion issued in this case is withdrawn, and the following opinion is substituted as the opinion of this Court.

¶2. A Jackson County jury awarded damages for the death of Richard Ladner to his family against Roy Anderson Corporation (Anderson) and Accu-Fab and Construction, Inc. (Accu-Fab). Anderson and Accu-Fab appealed that jury verdict based on several issues and subsequently filed a motion for rehearing.

Ladner has filed a motion for rehearing relative to this Court's ruling regarding whether Bracken should have been considered a "party" for apportionment of damages. This Court finds no error in the trial court's decision not to include Bracken in apportioning fault under Miss. Code Ann. § 85-5-7 (Rev. 1991), as well as the other issues presented in the motions for rehearing filed by Anderson and Accu-Fab; therefore, we affirm these matters.

## FACTS

¶3. In November 1993, Boomtown, Inc., a casino operator, had employed Anderson as general contractor to construct the Boomtown Casino in Biloxi, Mississippi. Anderson subcontracted a good portion of the work. Among the subcontractors were Accu-Fab, a metal fabricator, and Bracken Construction ("Bracken"), which employed Ladner as an iron worker.

¶4. On Monday morning, March 7, 1994, while working on the roof of the Boomtown Casino, Ladner fell through a hole cut in the roof and subsequently died of the injuries received. Ladner's family filed suit against Anderson, Accu-Fab, and Boomtown, Inc., seeking compensation for Ladner's death. Boomtown Inc., dismissed at the start of the trial, is not a party to this appeal.

¶5. The Boomtown Casino was being constructed on a barge that was on a navigable waterway. As a result, injuries sustained by construction workers were covered under the Longshore and Harbor Workers' Compensation Act, codified as 33 U.S.C. § 901, a federally sponsored workers' compensation program covering some maritime workers. Because this coverage was provided by the employer and is an exclusive federal remedy, Bracken, as Ladner's employer, was not a party to this action. 33 U.S.C. § 905. Both Anderson and Accu-Fab requested jury instructions to include Bracken in the apportionment of liability, pursuant to Miss. Code Ann. § 85-5-7 (1972). The trial judge denied the requested instructions citing *McBride v. Chevron U.S.A.*, 673 So. 2d 372 (Miss. 1996).

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED IN EXCLUDING BRACKEN CONSTRUCTION COMPANY FROM APPORTIONMENT OF FAULT.

¶6. Bracken, as required by 33 U.S.C. § 902, maintained Longshore and Harbor Workers' Compensation coverage for its employees engaged in covered maritime work. Benefits were paid to the Ladner family under the Longshore and Harbor Workers' Compensation Act. These benefits were the exclusive remedy available to Ladner against Bracken. Because Bracken was not a party to this action, the trial court refused to allow the jury to consider, in the case *sub judice*, the extent of fault, if any, of Bracken in causing Ladner's injuries.

¶7. Mississippi Code Annotated § 85-5-7 (1972) provides for the allocation of fault and contribution among joint tort-feasors. Section 85-5-7(7) places the responsibility upon the triers of fact to "determine the percentage of fault of each party alleged to be at fault." The trial court, based upon *McBride,* interpreted the term "party" to mean an actual party to the lawsuit. *McBride*, 673 So. 2d at 372. Anderson and Accu-Fab argue that the trial court was in error and that pursuant to the Mississippi Supreme Court's holding in *Estate of Hunter v. General Motors Corporation*, 729 So. 2d 1264 (¶¶ 29-38) (Miss. 1999), the trial court was required to include Bracken as a party for the purpose of the jury apportioning damages.

¶8. In the recently decided case of *Estate of Hunter*, the Mississippi Supreme Court considered the issue

of the ramifications of the term "party" and specifically held that any party alleged to be at fault, whether or not made a defendant to the suit, may have fault apportioned against him under Miss. Code Ann. § 85-5-7. *Id*. Due to the legal position of Bracken in the case at bar, this Court finds *Estate of Hunter*, is distinguishable from the case at bar, and therefore, inapplicable. Therefore, we come to the ultimate conclusion reached by the trial judge that Bracken is not a "party" for the purpose of apportionment.

¶9. In *Estate of Hunter*, the plaintiffs urged that a settling defendant should not be included in the apportionment of damages. *Id*. at (¶ 29). The Mississippi Supreme Court held that the jury could consider the fault of a settling truck driver and his employer in apportioning fault under comparative negligence principles. *Id*. at (¶ 44). The primary distinction in *Hunter* is the fact that there was no law that regulated this settlement, and if the plaintiffs had not reached a previous settlement with the truck driver and his employer, they would not have been precluded from pursuing a lawsuit for negligence. In the case at bar, the representative for the estate of Ladner was not vested with the discretion to elect to pursue any other course for compensation other than workers' compensation benefits. We first approach this distinction between the factual scenarios in the case at bar and the one in *Hunter* by looking to the dissent in this opinion for the definition of the word "party," and although this opinion is not authoritative, we are inclined to agree with the definition for the term.

¶10. The dissenters in *Hunter*, rely on the definition supplied within Black's Law Dictionary. *Id*. at (¶ 65).

> A "party" to an action is a person whose name is designated on record as the plaintiff or defendant . . . . "Party" is a technical word having a precise meaning in legal parlance; it refers to those by or against whom a legal suit is brought, whether in law or in equity, the party plaintiff or defendant, whether composed of one or more individuals and whether natural or legal persons; all others who may be affected by the suit, indirectly or consequently, are person interested but not parties.

*Black's Law Dictionary* 1122 (6th ed. 1990) (citations omitted). With the acceptance of this definition of "party," on its face it appears that Bracken is not to be considered a party; therefore, the jury was not to consider Bracken in allocating damages. We now further elaborate on the factors in the case at bar that prevent the jury from considering Bracken when allocating fault relative to Anderson and Accu-Fab who were named as defendants in this civil action.

¶11. Bracken was in the unique position of having no fault pursuant to the Longshore and Harbor Workers' Compensation Act, codified as 33 U.S.C. § 901. This outcome was predetermined by the mere fact that Ladner had accepted employment with Bracken. Since Ladner was an employee of Bracken, it had been agreed that any injuries suffered by Ladner would be compensated under workers' compensation and not an action for negligence. Due to workers' compensation law, Bracken could not have been engaged in this civil action by the representative for the estate of Ladner. Additionally, we note that not only is Bracken immune, but since it paid workers' compensation benefits, it would also have a subrogation claim against the monetary damages awarded to Ladner. Since Bracken is limited in liability, to allocate a percentage of responsibility to Bracken is a deception on the jury. If the jury apportioned a percentage of fault to Bracken they would presume that Bracken would pay their percentage relative to the monetary damages award, and contrary to this presumption, no further compensation can be acquired from Bracken. In turn, Ladner is denied the compensation he deserves. It is wholly inequitable for the plaintiff to suffer the risk of a partial or complete reduction in recovery. It is improper to allow the jury to have the right to apportion damages to Bracken when the result is to limit Ladner's damages due to the policies of workers' compensation law

which forbids additional benefits beyond those statutorily awarded, and at the same time any fault apportioned amongst the other parties returns to Bracken as the employer due to its right of subrogation. Additionally, Anderson and Accu-Fab had the opportunity to expose any theory of fault relative to Bracken at the time of the trial. Anderson and Accu-fab were given the opportunity to cross-examine employees for Bracken relative to occurrences prior to the death of Ladner. The jury had the benefit of this information and found that Ladner bore five percent of the responsibility in the events that resulted in his death. As employees, Ladner and his co-workers were the alter-ego of Bracken. Consequently, since the jury had the benefit of the testimony of the employees for Bracken, there was a constructive apportionment when the jury found five percent liability on the part of Ladner inasmuch as Bracken can only act through its agents and employees. It is for the aforementioned reasons that Anderson and Accu-Fab should not be allowed to benefit from the relationship that existed between Ladner and Bracken and deny Ladner the compensation that has been awarded by the jury. Therefore, we find the decision of the trial court to be proper and this issue without merit. Having resolved this issue, the following additional errors were assigned by Anderson:

> **MISSISSIPPI PROVIDES TO CONTRACTORS, WHOSE SUBCONTRACTORS CARRY WORKERS' COMPENSATION INSURANCE, IMMUNITY FROM LIABILITY FOR A STATE LAW WRONGFUL DEATH NEGLIGENCE CLAIM BROUGHT BY A SUBCONTRACTOR'S EMPLOYEE'S SURVIVORS. FEDERAL LAW (THE LONGSHORE AND HARBOR WORKERS' COMPENSATION ACT (LHWCA)) DOES NOT. WHERE THE SURVIVORS OF A LONGSHOREMAN/CONSTRUCTION WORKER, WHO IS COVERED BY BOTH THE MISSISSIPPI WORKERS' COMPENSATION ACT AND THE LHWCA, ELECT TO RECEIVE LHWCA BENEFITS, IS THE CONTRACTOR STRIPPED OF ITS IMMUNITY UNDER STATE LAW FROM STATE LAW CLAIMS?**

> **WHERE A CONSTRUCTION WORKER FELL THROUGH A SIX-FOOT-WIDE HOLE IN PLAIN DAYLIGHT, AND HIS SURVIVORS BROUGHT A WRONGFUL DEATH CIVIL ACTION FOR NEGLIGENCE, DID THE TRIAL COURT REVERSIBLY ERR IN EXCLUDING EVIDENCE OF A URINE TEST WHICH WAS POSITIVE FOR MARIJUANA AT THE TIME OF HIS FALL AND OF A MARIJUANA CIGARETTE FOUND IN HIS POCKET AFTER THE ACCIDENT, REGARDLESS OF WHETHER CONSENT WAS OBTAINED TO TAKE THE URINE SAMPLE?**

> **WHETHER OSHA REGULATIONS ARE ADMISSIBLE AS EVIDENCE OF NEGLIGENCE?**

> **WHERE A SUBCONTRACTOR BEGINS PERFORMING PRIOR TO THE EXECUTION OF A STANDARD GENERAL CONTRACTOR-SUBCONTRACTOR CONTRACT, WHICH INCLUDES AN INDEMNITY PROVISION, IS ADDITIONAL CONSIDERATION REQUIRED AT THE TIME OF EXECUTION OF THE STANDARD CONTRACT?**

> **WHERE A SUBCONTRACTOR KNOWS OR SHOULD KNOW OF THE DANGER, DOES A GENERAL CONTRACTOR HAVE A DUTY TO WARN A SUBCONTRACTOR WORKING AROUND A SIX-FOOT WIDE HOLE IN THE ROOF ABOUT THE DANGER OF FALLING INTO THE HOLE?**

¶12. In Accu-fab's motion for rehearing, it has assigned two errors which essentially were not covered in the errors raised by Anderson in its motion for rehearing; however, Accu-fab did not address the Mississippi Workers' Compensation Act immunity issue and opposes those arguments asserted by Anderson on the indemnity issue. We will discuss whether the apportionment of five percent fault relative to Ladner's comparative negligence regarding his wrongful death was against the overwhelming weight of the evidence next, and will address the issue of the exclusion of Ladner's prior conviction when we address the issue of the exclusion of Ladner's drug test and other evidence of drugs.

## II. WHETHER THE APPORTIONMENT OF FIVE PERCENT FAULT RELATIVE TO LADNER'S COMPARATIVE NEGLIGENCE REGARDING HIS WRONGFUL DEATH WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶13. Accu-Fab argues that the jury apportioning only five percent of the liability to Ladner for his resulting injury and death was against the weight of the evidence and should have been modified by the trial court. Although after the trial concluded, Accu-fab filed a motion for JNOV, or in the alternative, motion for a new trial, or in the alternative motion for remittitur, in Accu-fab's motion for rehearing it only argues the weight of the evidence. Therefore, this Court will only address the weight of the evidence presented at the trial as it pertains to Ladner's comparative negligence.

¶14. In *Herrington v. Spell*, 692 So. 2d 93, 103-04 (Miss. 1997), the Mississippi Supreme Court stated, when an appellate court adjudicates whether a jury verdict is against the overwhelming weight of the evidence, the court must accept as true all the evidence which supports the verdict. An appellate court will only reverse the decision of the trial court when certain that the trial court has abused its discretion in failing to grant a new trial. *Id*. On appeal, this Court will disturb a jury verdict only when the verdict rendered by the jury is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. *Id*.

¶15. Testimony revealed that Ladner was on the roof because he had been assigned to fly tools down. It was further revealed that Ladner had not been informed a hole existed prior to his fall. Additionally, no evidence was given which proved that Ladner had seen the hole created by Accu-fab prior to his fall. Furthermore, it was disclosed that Ladner was within a perimeter safety line which was a confined area on the roof; therefore, he was not required to wear a safety belt. After the accident occurred, employees with both Anderson and Accu-fab approached and viewed the hole which Ladner fell through without wearing safety belts. While some witnesses believed a safety belt might have made a difference, the general consensus derived from the differing testimony pertaining to Ladner's possible attribution to his death revealed that even if Ladner had worn a safety belt while working near the hole, due to the work Ladner was performing he would have been at risk at destroying his safety belt, he was not provided an appropriate place to attach the belt within the safety barricade of the clock tower, and would have still had to unhook the belt to continue performing further tasks. Due to the conditions of his surroundings and the demands of his work, under either theory Ladner was exposed to the dangers of the open hole created by Accu-fab. With this testimony in mind, this Court also notes that some witnesses espoused that if Ladner were aware of the hole he should have ceased working and notified someone of the necessity to barricade or cover the hole. Accu-fab has cited case law in an attempt to support its argument; however, this Court finds all of these cases to be inapplicable since they are distinguishable from the case at bar. Therefore, upon reviewing all of the evidence presented, in the light most consistent with the verdict, we find that the jury's apportionment of five percent fault to Ladner was not against the overwhelming weight of the

evidence. The trial judge did not abuse his discretion in denying Accu-Fab's motion for a new trial. Accordingly, we find this assignment of error to lack merit.

¶16. Finally, the insurer of Bracken Construction Company, Employers' Insurance of Wausau, intervenes in the motion for rehearing, not surprisingly, to endorse the position of Bracken that apportionment of damages was properly disallowed against Bracken by the trial court, and that the issues presented by Anderson and Accu-fab on rehearing be denied. These issues, of course, are disposed of in our discussion of the arguments presented by Bracken, Accu-fab, and Anderson.

¶17. We turn now to Anderson's remaining issues.

### III. WHETHER ROY ANDERSON WAS ENTITLED TO STATUTORY IMMUNITY UNDER MISSISSIPPI WORKERS' COMPENSATION ACT.

¶18. Roy Anderson has argued an entitlement to statutory immunity under this State's Workers' Compensation Act. Because Miss. Code Ann. § 71-3-9 (Rev. 1995) makes workers' compensation the exclusive remedy against an employer for a job related action, no other civil action may be brought against the employer. This immunity from civil action also extends to statutory employers. Miss. Code Ann. § 71-3-7 (Rev. 1995). A statutory employer, as set forth in § 71-3-7, is a general contractor who is obligated to provide workers' compensation coverage to the employees of his subcontractor not covered by a workers' compensation policy. However, Miss. Code Ann. § 71-3-5 (Rev. 1995) provides that this State's Workers' Compensation Act does "not apply to transportation and maritime employments for which a rule of liability is provided by the laws of the United States."

¶19. A covered employee under the Longshore and Harbor Workers' Compensation Act "means any person engaged in maritime employment including . . . any harbor workers including a ship repairman, shipbuilder." 33 U.S.C. § 902(3). At the time of injury, Ladner was engaged in the construction of a vessel upon a navigable waterway, and as such he was covered by the LHWCA. The parties agreed during argument on a motion for summary judgment that there was no immunity if Ladner was covered under the LHWCA. Having found Ladner to be covered by the LHWCA, this Court holds there was no immunity. Congress has mandated coverage for injured maritime workers under the LHWCA . 33 U.S.C. § 901. Because Congress has spoken to this matter, our Workers' Compensation statute specifically excludes it. There is, therefore, no immunity available to Anderson.

### IV. WHETHER THE TRIAL COURT ERRED IN EXCLUDING RESULTS OF DRUG TESTS AND OTHER EVIDENCE OF DRUGS, AS WELL AS EVIDENCE OF PRIOR CONVICTIONS.

¶20. Anderson and Accu-Fab contend that the evidence of marijuana in Ladner's body should have been admitted as evidence of his contribution to his injuries. The trial court disallowed this evidence. We sustain the trial court's finding.

¶21. When Ladner was taken to the hospital after his fall, a urine sample was taken to screen for drugs. This test was not done for the purpose of providing medical treatment, nor was permission obtained from Ladner or members of his family. Rather, the drug test was done as a result of an agreement between the hospital and Anderson to conduct drug tests on Anderson employees. Persons employed by Anderson were required to execute a written consent to post-injury drug testing. The actual drug testing was not

performed by the hospital but by a private lab with the results sent directly to Anderson. The record established that Ladner was not an Anderson employee and not covered by the agreement between Anderson and the hospital.

¶22. Our rules of evidence provide what is and is not admissible as evidence. Mississippi Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Mississippi Rule of Evidence 402 provides that all relevant evidence is admissible, and all irrelevant evidence is inadmissable.

¶23. Both Accu-Fab and Anderson cite *Hughes v. Tupelo Oil Co.*, 510 So. 2d 502 (Miss. 1987), as iron-clad authority that the drug screen performed on Ladner was admissible. However, a close reading of *Hughes* reveals the limited nature of that holding. In *Hughes*, the issue, as here, was whether the blood alcohol level of the decedent was admissible. In *Hughes*, the decedent, a pedestrian, was killed after being struck by a tractor-trailer truck while walking down the middle of the road. *Id.* at 504. The investigating law enforcement officer ordered the blood test pursuant to Mississippi's implied consent law; however, the supreme court held that the officer had no basis to order the test under the implied consent law because there was no evidence that the decedent was operating a motor vehicle. *Id.* at 505. Thus, having found that the blood test was ordered without proper authority, the court's analysis turned to the admissibility of improperly obtained evidence in a civil trial. *Id.* Relying on *United States v. Janis*, 428 U.S. 433 (1976), the Mississippi Supreme Court noted that the exclusionary rule had never been applied to exclude improperly obtained evidence in a civil proceeding. *Hughes*, 510 So. 2d at 505. The purpose of the exclusionary rule is to deter improper police conduct. *Id.* Thus, since the suppression of the blood test would not deter the police officer who ordered the test, then there was no basis to exclude the otherwise relevant evidence. *Id.* But, the supreme court specifically held "[w]e make no determination of the admissibility of evidence obtained through the wrongful acts of the party seeking its admission . . . ." *Id.*

¶24. In the case *sub judice*, the question specifically not answered by the supreme court in *Hughes* is squarely presented here, and we answer it in favor of Ladner based on an application of our rules of evidence that the trial judge properly ruled that this evidence was inadmissible in favor of Anderson and Accu-Fab. Neither appellant had authority to draw samples, nor to order samples drawn of bodily fluids from the decedent for testing purposes. Ladner was not an employee of Anderson nor Accu-Fab, thus any drug-testing policy applicable to their employees necessarily did not apply to Ladner.

¶25. "[A]dmission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion." *K-Mart Corp. v. Hardy,* 735 So. 2d 975, 982 (Miss. 1999) (citing *Broadhead v .Bonita Lakes Mall, Ltd. Partnership*, 702 So. 2d 92,102 (Miss. 1997)) (quoting *Sumrall v. Mississippi Power Co.*, 693 So. 2d 359, 365 (Miss. 1997)) (other citations omitted). Further, for a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party. *Terrain Enter., Inc. v. Mockbee*, 654 So. 2d 1122, 1131 (Miss. 1995).

¶26. Anderson and Accu-Fab have not suggested, nor does the record establish, that a substantial right was violated by the exclusion of this evidence. There is no evidence in the record which would suggest that Ladner suffered from an impairment which caused or contributed to his own injuries. Absent this necessary foundation, the trial court properly excluded this evidence. *See Holladay v. Tutor*, 465 So. 2d 337, 338

(Miss. 1985) (finding a box of marijuana and quaaludes found in defendant's car was not relevant and its only purpose was to prejudice the jury); *see also Pope v. McGee*, 403 So. 2d 1269, 1271 (Miss. 1981) (excluding evidence of two six packs of beer and an unidentified white powder found in defendant's car because they offered no proof on proximate causation of the collision, and its prejudicial value greatly outweighed its probative value).

¶27. With our sustaining the trial court's ruling that the drug tests were inadmissible, the issue of the marijuana found in the decedent's pants pocket becomes moot. With there being no evidence that Ladner was affected in his work by the influence of drugs -- thus rendering the drug tests irrelevant -- we likewise find that the contents of Ladner's pockets were irrelevant and without proper foundation. *See Mockbee*, 654 So. 2d at 1131.

¶28. Accu-Fab also argues that the trial court improperly excluded Ladner's 1980 criminal conviction for possession of a controlled substance with the intent to deliver. Accu-Fab contends it should have been allowed to admit this evidence relative to the decedent's future earning capacity during the economist testimony presented by Ladner. The trial court entered an order excluding this evidence, holding that such evidence was irrelevant to the issues involved in the case at bar. Ladner argues that the evidence of the prior criminal conviction was properly excluded under Mississippi Rules of Evidence 609. This Court notes that with the exception of the distinguishable Fifth Circuit case of *Carroll v. Morgan*, 17 F.3d 787 (5th Cir. 1994), Accu-Fab has failed to cite authoritative law for this state, to support its position on admissibility of Ladner's prior conviction to show its effect on his future earning potential. As aforementioned, the point of law for which Accu-fab has cited the fifth circuit case of *Carroll*, is factually distinguishable from the case at bar.

¶29. In *Carroll*, Accu-fab supports its position for the admission of Ladner's prior conviction, based on the holding of the court that a doctor was allowed to give expert opinion testimony on plaintiff's decedents intemperance to show decedent was not healthy and this previous condition might have resulted in a reduced life expectancy. *Id*. at 791. This case is distinguishable from the case at bar, because *Carroll* dealt with the admission of expert opinion testimony entered into evidence in the realm of medical testimony and was relevant to the patient's possible cause of death. In the case at bar, we are dealing with the admissibility of a fifteen year-old prior criminal conviction which has no relevance to the patients cause of death. With this distinction having been made, and after researching this state's law, we can find no law which supports Accu-fab's argument; therefore, we find this issue to be without merit.

## V. WHETHER OSHA REGULATIONS WERE ADMISSIBLE AS EVIDENCE OF NEGLIGENCE.

¶30. Anderson and each of his subcontractors, by written contract, agreed to perform all work consistent with U.S. Department of Labor's Occupational Safety and Health Standards (OSHA). Appellants argue that admission of information regarding OSHA standards was improper. However, during the course of oral argument before this Court, counsel for appellant indicated it was not the reference to OSHA standards, but rather the number of times the name of a federal administrative agency was invoked and whether such a frequent reference to OSHA unduly influenced the jury.

¶31. As a matter of law, evidence regarding OSHA standards is not admissible to prove negligence per se, or the lack of negligence per se. *Sumrall v. Mississippi Power Co.*, 693 So. 2d 359, 367 (Miss. 1997). However, our rules of evidence allow limited admissibility of certain evidence for one purpose but not for

another. M.R.E. 105. Thus, applying Rule 105, we find the OSHA standards could be introduced to aid the trier of fact in determining whether the actions complained of were reasonable and consistent with industry standards provided that the jury was properly instructed as to the limited nature for which the OSHA standards were admissible. Instruction P-22(a) provided the necessary limitation on the use of the evidence, instructing that the OSHA standards could not be used to find negligence per se on the part of Anderson and Accu-Fab, but could be used as a measure of reasonable care consistent with industry standards.

¶32. We find the purpose for which the trial court allowed the introduction of the OSHA standards was sufficiently limited and, therefore, not improper. Accordingly, this Court finds no error in the admission of OSHA standards or reference to OSHA.

### VI. WHETHER ACCU-FAB WAS REQUIRED UNDER ITS CONTRACT TO INDEMNIFY ANDERSON.

¶33. Accu-Fab was employed as a subcontractor by Anderson. Accu-Fab began its work without a written contract. This work was begun prior to Ladner's accident which occurred on March 7, 1994. After the March 7, 1994 fatal accident, Anderson sent a written contract to Accu-Fab for its execution.

¶34. This contract was received by Accu-Fab on March 9, 1994, executed and returned to Anderson on March 11, 1994. The contract, as executed by Accu-Fab, included general language which required indemnification of Anderson by Accu-Fab. The jury found no entitlement to indemnification, and Anderson now argues that indemnification should have been compelled as a matter of law.

¶35. While not argued by the parties, we are compelled to note that this state's public policy, as set forth in Miss. Code Ann. § 31-5-41 (Rev. 1990), precludes enforcement of this indemnification agreement. Miss. Code Ann. § 31-5-41 reads as follows:

> With respect to all public or private contracts or agreements, for the construction, alteration, repair or maintenance of buildings, structures, highway bridges, viaducts, water, sewer, or gas distribution systems, or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise, and/or agreement contained therein to indemnify or hold harmless another person from the person's own negligence is void as against public policy and wholly enforceable.

> This section does not apply to construction bonds or insurance contracts or agreements.

It is clear that this is a construction contract where Anderson seeks indemnification for its negligent actions. Such indemnification is void as against public policy as set forth in Miss. Code Ann. § 31-5-41.

¶36. In addition to being violative of public policy, this claim also fails for lack of consideration. An agreement for indemnification, like any other contract, must be supported by consideration. *Anderton v. Business Aircraft, Inc.*, 650 So. 2d 473, 476 (Miss. 1995). This is especially true where the occurrence for which indemnification is sought predates the indemnity agreement. This Court has found nothing in the record to indicate any consideration flowing to Accu-Fab so as to compel it to indemnify Anderson for Ladner's injuries.

¶37. Anderson suggests that Accu-Fab did receive consideration for its agreement to indemnify Anderson for Ladner's injuries. The consideration suggested by Anderson was the contract price to be paid to Accu-

Fab for work performed. While it is possible to execute a contract which indemnifies for prior events, such a contract must clearly set forth that intention. This is particularly true where the incident for which indemnification is sought has already occurred and is known to both parties prior to the execution of the contract.

¶38. In this case, the contract does not include prior occurrences, nor does it specifically include the known event. Under these facts, we decline to find error on this issue.

## VII. WHETHER THERE WAS A DUTY OWED TO LADNER BY ANDERSON AND ACCU-FAB.

¶39. Anderson was intent on keeping construction on schedule. In an effort to do so, the metal roof was placed on the barge prior to Accu-Fab's installation of all of the stairs. As a result, Accu-Fab received permission from Anderson to cut the six foot hole in the roof to lower the stairs in place.

¶40. By contract, Anderson had exclusive control of the construction site and all activities conducted there. All work was to be coordinated through and approved by Anderson. No changes or alterations, such as cutting the hole through which Ladner fell, were to be made without the knowledge and approval of Anderson.

¶41. The supreme court in *Oden Const. Co. v. McPhail*, set out the general rule regarding the duty owed by a general contractor on a construction job:

> The general rule is that a general contractor on a construction job who is in control of the premises is burdened with the duty to use ordinary care to provide a safe place for employees of a subcontractor to work . . . .

> As part of supervising the work, it is the duty of the general contractor to oversee conditions in the work of each subcontractor so far as they affect the safety of the employees of the subcontractor.

*Oden Const. Co. v. McPhail,* 228 So. 2d 586, 587 (Miss. 1969) (quoting *Raich v. Aldon Const. Co.*, 276 P.2d 822, 827-28 (Cal. App. 1954)).

¶42. Whether Anderson used ordinary care is a question of fact to be determined by the jury. The jury was presented with information which showed:

> (1) the hole was cut with Anderson's knowledge and permission;

> (2) that the hole was cut after Bracken and its employees (Ladner) had gone home for the weekend;

> (3) that only Anderson had any material available to cover the hole;

> (4) that Anderson generally covered holes and other dangerous conditions; and,

> (5) there was a dispute as to whether Ladner's employer was informed of the dangerous conditions.

¶43. These facts created a jury question. The record contains sufficient evidence upon which the jury could, and did, determine that Anderson breached its duty of reasonable care.

¶44. This same is true of Accu-Fab, which actually cut the hole.

**CONCLUSION**

¶45. Under the circumstances presented in the case at bar, the trial court properly denied the inclusion of Bracken in the apportionment of damages, as well as having made proper findings of fact and law relative to the aforementioned issues. Therefore, we affirm the judgment of the trial court.

¶46. **THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN ANDERSON AND ACCU-FAB.**

**BRIDGES, DIAZ, PAYNE, AND THOMAS, JJ., CONCUR. IRVING, J., CONCURRING IN PART AND DISSENTING IN PART JOINED BY KING, P.J. MCMILLIN, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J. MOORE, J., NOT PARTICIPATING.**

McMILLIN, C.J., DISSENTING:

¶47. I respectfully dissent. The question of whether "fault" within the meaning of Section 85-5-7 can be apportioned to an entity not a party to the litigation has been answered in the affirmative by the case of *Estate of Hunter v. General Motors,* 729 So. 2d 1264 (Miss. 1999). The majority of this Court errs when it relies upon a proposed definition of the word "party" contained in the dissent in *Estate of Hunter* to suggest that Bracken's unavailability as a defendant in the tort action precluded the jury from calculating Bracken's percentage of fault in Ladner's death. We, as an intermediate appellate court, are obligated to follow the precedents contained in decisions of the Mississippi Supreme Court.

¶48. In *Estate of Hunter*, the supreme court considered whether the use of the term "party" in Section 85-5-7 meant that an alleged wrong-doer had to be a party to the litigation in order to have fault assigned to it. The court concluded that the Legislature intended the term only as a single-word means of identifying any of the multiple entities capable of being adjudicated at fault, whether an individual or some recognized legal entity such as a corporation. *Id.* at 1276 (¶44). Justice McRae, writing in dissent, urged a contrary interpretation of the word "party" as referring to an entity lawfully before the court and subject to the court's jurisdiction. *Id.* at 1281 (¶66). In that situation, no matter how compelling the members of this Court might find Justice McRae's argument, we simply are not at liberty to adopt it in this situation. Rather, we must concede the issue to the majority's view contained in the opinion of the court.

¶49. Having determined that *Estate of Hunter* admits of the *possibility* that Bracken could have some fault apportioned to it even though it was not a party to the litigation, we ought then to turn to the related question of whether the decision in that case *requires* the jury to consider the potential degree of negligence of an employer enjoying immunity under workers compensation law. In my view, the reasoning in *Estate of Hunter* does not necessarily compel the same result in this case. To a large extent, *Estate of Hunter* was decided based upon policy considerations of fundamental fairness rather than principles of logical interpretation of statutory language. That policy consideration was the inherent unfairness seen to arise from refusing to permit fault to be allocated to a settling defendant. In the view of the supreme court, this gave rise to the possibility that the plaintiff would purposely agree to a nominal settlement against an indigent defendant, even though that defendant had substantial culpability in causing the injury, in order to preserve the potential for a larger recovery from a less culpable defendant with deeper pockets. *Id.* at 1273 (¶32).

¶50. The same considerations of policy do not arise in the context of this case. When the absent defendant is the injured party's employer, that employer is exempt from suit by statute and the inclusion or exclusion of the employer is not a matter subject to manipulation by the injured employee.

¶51. A different policy consideration arises in the situation now before us. The question becomes whether the injured plaintiff must see his potential recovery diminished by an assignment of fault to his immune employer or whether a third party defendant may be made to respond in damages in an amount that exceeds that defendant's proportionate share of fault in causing the injury. In my view, the more equitable result is to permit allocation of fault to the exempt employer. While this diminishes the injured party's ultimate recovery in the tort action, the injured party has already obtained or may, post verdict, seek recovery under the compensation law from his employer. This right of recovery under workers' compensation law is specifically intended to replace the previously-existing common law right of recovery against the employer in tort. Thus, if the injured party is entitled to pursue both compensation benefits and recovery in tort from a negligent third party whose liability is undiminished by the percentage of fault attributable to the injured party's employer, the injured party is, to an extent, compensated twice for the same injury. I would find it proper to require the allocation of fault to an immune employer to avoid such double recovery.

¶52. Additionally, I respectfully disagree that evidence of the presence of marijuana in Ladner's bloodstream, together with evidence of marijuana cigarettes in his pocket, was inadmissible. There was a legitimate jury issue as to what percentage of fault for the accident could be attributed to Ladner under Mississippi's comparative negligence law. Miss. Code Ann. § 85-5-7 (1972). It would be my firm view that evidence tending to show that Ladner may have been under the influence of a consciousness-altering drug to some degree was, at least potentially, admissible for such consideration as the jury determined was proper. Whether that evidence would need to be accompanied by expert testimony to assess the levels of drug ingestion discovered and the typical degree of motor or mental skill impairment that accompanies such a dosage level is another matter and one that could be resolved on remand. However, the threshold exclusion of the evidence based on considerations involving the manner in which the evidence was gathered was, in my view, patently wrong. Evidence in a civil trial is admitted or excluded principally on the issue of its probative value and not on the means by which it was gathered (excluding, of course, such self-evident exceptions as the various privileges set out in Mississippi Rule of Evidence 501 through 505). The trial court in this instance concluded that Ladner had not consented in advance to having his blood drawn and tested for drugs. Even assuming the truth of that proposition, there is nothing in the rules of evidence that would suggest the propriety of excluding the evidence on that basis.

¶53. The majority errs when it suggests that this case squarely presents the question unanswered in *Hughes v. Tupelo Oil Co.* as to whether evidence obtained through the wrongful acts of a party may be properly excluded when that party seeks its admission. *Hughes v. Tupelo Oil Co.*, 510 So. 2d 502, 505 (Miss. 1987). As a result, the majority's subsequent reasoning to exclude evidence of Ladner's possible impairment by answering the "unanswered question" of *Hughes* in favor of exclusion is faulty because it begins with an erroneous premise. There is no evidence that any defendant committed a wrongful act in obtaining Ladner's blood sample. The blood was drawn by a hospital operating under the mistaken assumption that Ladner was an employee of Roy Anderson Corporation, and there simply is no indication that any party in this case did anything wilfully or even negligently to create this false assumption on the hospital's part.

¶54. As an appellate court, we traffic in concepts defined as best we can with the available words of our

language. On occasion, words may fairly be said to be an imperfect means of communication. But to say that a *mistake* by an entity not a party to this litigation may be equated to a *wrongful act* by a party to the case, and then use that proposition as the basis to exclude relevant evidence is, in my view, an egregious mishandling of the essential tools of our trade.

¶55. There is no hint that Anderson Corporation and Accu-Fab were engaged in an underhanded scheme to surreptitiously test an unconscious and dying Ladner for drugs. Evidence that he might have been impaired through the use of illegal drugs was certainly relevant. If it is to be excluded on retrial, it ought to be on some other basis than that advanced by the majority in its opinion.

¶56. Ladner also points out that the trial court based its ruling in part on the proposition that the evidence of Ladner's drug use was so prejudicial that it failed to pass the filtering screen of Mississippi Rule of Evidence 403. To the extent that the trial court based its ruling on that idea, I would reject the notion out of hand. Certainly, evidence of impaired physical and mental capabilities brought on by self-administered illegal drugs may be prejudicial, but, when the issue is whether Ladner, by his actions, contributed to his own death, that evidence so fundamentally goes to the heart of the case that its probative value necessarily exceeds any attendant prejudice to the plaintiff. To hold otherwise would be to suggest that, in a tort suit involving an automobile accident, evidence that one driver was substantially intoxicated could be kept from the jury because of the inflammatory nature of such evidence in today's society.

¶57. I conclude that we err when we preclude any possibility that the jury could hear evidence of Ladner's impairment based on drug use and would remand with instructions that the evidence *might* be admissible assuming the proper predicate could be laid to demonstrate that the drug concentration was sufficient to impair Ladner's mental and motor skills to even the slightest degree. *See Allen v. Blanks,* 384 So. 2d 63, 67 (Miss. 1980) (holding that "[i]t is a fact capable of judicial notice that consumption of even small quantities of alcohol may significantly, albeit "imperceptibly," impair reaction time."). Whether impairment from marijuana use is a matter "capable of judicial notice" is a matter better left to be thrashed out at the trial level on remand, but, short of that, it is certainly a matter capable of scientific proof.

**SOUTHWICK, P.J., JOINS THIS SEPARATE WRITTEN OPINION.**

IRVING, J., CONCURRING IN PART, DISSENTING IN PART:

¶58. With deference to the majority's views, I dissent from its holding that Bracken is not a joint tort-feasor for purpose of apportionment under Miss. Code Ann. § 85-5-7(7) (1972). The Mississippi Supreme Court's construction of this statute in *Estate of Hunter*, 729 So. 2d 1264 (Miss. 1999) leaves no room for equivocation on this issue. That is made certain by the following quote from *Hunter*: "This Court holds that the term 'party', as used in § 85-5-7(7), refers to any participant to an occurrence which gives rise to a lawsuit, and not merely the parties to a particular lawsuit or trial." *Id* at 1276.

¶59. I also dissent from the majority's conclusion that the jury's apportionment of fault to Ladner, Bracken's employee, equates to constructive apportionment of fault to Bracken. I agree with the majority that a corporation acts through its agents and employees. However, Ladner was a common laborer, not a member of the board of directors of Bracken or its management level personnel. I know of no authority holding that the actions of a corporate employee at this low level may be equated to the actions of the corporation.

¶60. While I appreciate the majority's argument as to why Bracken should not be included in the apportionment process, I cannot ignore the clear holding of the Mississippi Supreme Court which makes it impossible to arrive at the result reached by the majority on the apportionment issue without refusing to follow precedent set by our Supreme Court. Since I cannot distinguish *Hunter,* and because I do not believe an employee at Ladner's level can be considered the alter ego of Bracken, I must part company with the majority on this issue.

¶61. I also disagree with the majority's reasoning for upholding the trial court's ruling excluding the results of the drug test from the evidence in this case. However, I do believe the trial judge's decision should be upheld because, in my opinion, the record here is insufficient to warrant a finding that the trial judge erred, although his reason may not have been sufficiently grounded.

¶62. I arrive at my position on this point because I believe the record is insufficient to warrant a finding that Anderson acted properly or improperly in obtaining the evidence and that the resolution of the issue of whether the drug test evidence was properly excluded should be premised not on Anderson's actions but on whether the evidence was relevant. The record is devoid of evidence sufficient for us to make such determination. Therefore, I would uphold the trial judge's exclusion of the drug test results. Anderson did not make a proffer evidencing a sufficient relevant basis to support admission of the evidence. The fact that Ladner had a drug in his system at the time of the accident, without more, is not relevant to the question of his contributory negligence in the accident. Since Anderson made no proffer of how this evidence was relevant to the issue being tried, I would hold that it did not preserve the issue for proper review. My treatment of this issue should not be interpreted to mean that a finding of misconduct on Anderson's part in obtaining the drug test and result is immaterial to the decision to admit the drug test evidence. I simply find that the record here is insufficient to make such a finding. In a proper case, I would agree with the majority that misconduct on the part of the proponent of the evidence in obtaining the evidence should preclude its admission.

¶63. I concur with the reasoning and result reached by the majority on the other issues. However, I would reverse and remand for a new trial so that the issue of apportionment can be placed before the jury.

**KING, P.J., JOINS THIS SEPARATE WRITTEN OPINION.**