IN THE SUPREME COURT OF MISSISSIPPI
NO. 1998-KA-01706-SCT

*BOBBY STRICKLAND*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/21/1998 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | CLARKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID A. STEPHENSON |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/17/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/7/2001 |

**EN BANC.**

**McRAE, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Bobby Strickland, then fifty-seven years old, was arrested on January 10, 1998, and charged with DUI. He was subsequently indicted by a Clarke County Grand Jury for the offense of DUI Third Offense. As a result, the jury had knowledge of the fact that Strickland had twice been convicted of driving under the influence. He was also charged as a habitual offender, having been previously convicted of possession of a firearm by a felon (February 17, 1995) and aggravated assault (June 12, 1981). A jury trial was had in the Circuit Court of Clarke County starting August 24, 1998. The jury returned a verdict of guilty of driving under the influence of alcohol. Strickland was given a sentence of life in prison without parole. Strickland's motion for a new trial was overruled. Finding Strickland's arguments to be without merit, we affirm his conviction.

**I.**

¶2. On January 10, 1998, Mississippi Highway Patrol Officer Jerome Lee was driving south of Quitman on U.S. Highway 45 around 6:30 p.m. when he got behind a Ford pickup truck that "was all over the road." It was "crossing the center line, meeting traffic and they were almost colliding with each other." Lee turned on the video camera in his vehicle and followed the truck for approximately a mile before activating his blue light to stop the vehicle just as it made a wide turn into County Road 125. Lee walked up to the truck and asked the driver, Bobby Strickland, to step outside his vehicle. Lee testified that the driver "appeared to be having difficulty with his movements," staggering. "He was having to hold on to the truck to walk." The truck smelled like beer, and there was one empty beer can on the floorboard of the truck. Lee helped Strickland

walk to the rear of Lee's police car. Apparently, no roadside or breathalyzer blood test was given.

¶3. Lee drove Strickland to the county jail and, after a computer check, discovered that Strickland's license had been suspended for two past DUIs. Lee requested a Quitman police officer, Alton Beckman, to conduct a breathalyzer analysis on Strickland. Certified copies of the previous DUI convictions were entered into the record **without objection** from the defendant, as was a videotape of the arrest.

¶4. Trooper Ronnie Carter testified that Strickland was convicted of DUI first offense on February 24, 1995, and DUI second offense on March 14, 1995. Carter recalled that Strickland was able to blow into the breathalyzer at his first arrest. On the arrest for DUI Second Offense, Strickland refused to submit to a breathalyzer.

¶5. Quitman police officer Alton Beckham testified that Strickland refused to take the breathalyzer. Beckham stated that Strickland told him that he was drunk but that "it wasn't going to be on paper how drunk he was."

¶6. Strickland took the stand in his own defense and testified to his poor physical condition on the day of his arrest. Strickland suffers from diabetes and high blood pressure. On the day of his arrest, Strickland stated that he had not had a drink of alcohol in a year and a half. He was on his way back from purchasing cigarettes when he was arrested. At that time he was sweating all over and, having failed to take his glasses with him, could not see very well. There was a "half a sack" of beer cans located in the back of Strickland's truck that he had recently collected from the side of the highway. Strickland testified that Officer Lee flashed his flashlight in his eyes when he came upon his truck and that he had to sit there a few minutes to regain his focus.

¶7. When taken to the station and asked to take a breathalyzer, Strickland did not refuse to take the breathalyzer but informed Officer Beckham that he did not have sufficient breath to blow in the machine. Because of his failing eyesight, he could not even see a machine in the room.

¶8. In this appeal, Strickland raises three issues:

> **1. WHETHER THE LOWER COURT ERRED IN PERMITTING THE STATE OF MISSISSIPPI TO QUESTION STRICKLAND REGARDING HIS PAST ARREST FOR DUI.**
>
> **2. WHETHER THE LOWER COURT ERRONEOUSLY PERMITTED THE STATE OF MISSISSIPPI TO CROSS-EXAMINE STRICKLAND REGARDING HIS DRIVING WITHOUT A VALID DRIVER'S LICENSE.**
>
> **3. WHETHER THE LOWER COURT ERRED IN REFUSING TO GRANT A MISTRIAL WHEN THE JURY WAS TOLD THAT STRICKLAND WAS A CONVICTED FELON.**

**II.**

**STANDARD OF REVIEW**

¶9. The admissibility of evidence rests within the discretion of the trial court. *Peterson v. State*, 671 So.2d 647, 655-56 (Miss. 1996). The function of the reviewing court is to determine if the trial court abused its

discretion. ***Bogard v. State***, 624 So.2d 1313, 1316-17 (Miss. 1993).

¶10. The decision to declare a mistrial is within the sound discretion of the trial judge. To find error from a trial judge's failure to declare a mistrial, there must have been an abuse of discretion. ***Brent v. State***, 632 So.2d 936, 941 (Miss. 1994).

### III.

### DISCUSSION

### 1. WHETHER THE LOWER COURT ERRED IN PERMITTING THE STATE OF MISSISSIPPI TO QUESTION THE DEFENDANT REGARDING HIS PAST ARRESTS FOR DUI.

¶11. During opening statement, Strickland's attorney stated that he believed the evidence would show that Strickland did not refuse to take the intoxilyzer. Strickland's attorney stated: "As a matter of fact, I think the evidence is going to show he actually did blow into it; although, I think they will say it was an insufficient sample, is what they say."

¶12. The fact that Strickland had been convicted twice previously for DUI was testified to by Trooper Ronnie Carter. Carter also testified that while Strickland submitted to the breathalyzer on his first arrest, he refused to take the breathalyzer test on his second arrest.

¶13. On direct examination, Strickland testified that he told Officer Beckham, "I have a little problem with [breathalyzers] because my breath ain't long enough to blow in this latest machine." On cross-examination, the prosecution delved into Strickland's past experiences blowing into breathalyzer machines.

¶14. Strickland argues that it was error for the prosecution to bring out details of his previous DUI convictions. *See **Blanks v. State***, 547 So.2d 29 (Miss. 1989); ***Edlin v. State***, 533 So.2d 403 (Miss. 1988). He argues that this evidence was offered only to show that Strickland was acting in conformity with prior acts and was not admissible under M.R.E. 404(b).

¶15. The State argues that Beckham's testimony was "admissible to refute Strickland's announced theory that he did not refuse to take the intoxilyzer test but was physically unable to give a sufficient breath sample."

¶16. Pursuant to M.R.E. 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. In this case, the fact that Strickland failed to object to the introduction of his prior convictions into the record effectively waived his right to object to this evidence on appeal. Had the jury not been made previously aware of Strickland's prior DUIs, such evidence might have unfairly prejudiced the jury. However, the jury was fully aware that Strickland was being tried for his third DUI offense and testimony as to specific incidents involving past arrests for DUI was not substantially prejudicial to Strickland in this instance. As a result, this assignment of error must fail.

¶17. We note that there is no need for the State to introduce evidence of prior DUI convictions during the guilt phase of a trial. A better approach would be to introduce the prior convictions at the sentencing phase of the trial in order to prevent unfair prejudice to the defendant.

¶18. Miss. Code Ann. § 63-11-30(8) (Supp. 1999), requires an indictment to "state the number of times the defendant has been convicted and sentenced within the past five years under this section to determine if an enhanced penalty shall be imposed." This provision is in conflict with our Rules of Evidence. Rule 404(b) prevents the introduction of evidence of prior bad acts to show action in conformity therewith. In addition, Rule 403 prevents the introduction of otherwise relevant evidence if its probative value is outweighed by the danger of unfair prejudice to the defendant. Evidence of two prior convictions for the same crime that a defendant is currently being tried is the exact type of evidence that our Rules of Evidence seek to exclude.

¶19. We have held in the past that a statute in conflict with the Rules of Court are abrogated by this Court's rule-making power. *Hughes v. Tupelo Oil Co.*, 510 So.2d 502 (Miss. 1987). In *Hughes*, Miss. Code Ann. § 63-11-43 (1972) prevented the introduction of blood-alcohol test results in civil trials. We held this statute to be abrogated by Mississippi Rule of Evidence 501, which did not bar admission of the test results in civil trials. *Hughes*, 510 So.2d at 505.

¶20. Therefore, when a defendant is charged with subsequent violations of section 63-11-30, an indictment containing evidence of prior convictions should not be read to the jury. A jury should not be made aware of a defendant's prior convictions for the same crime that he is currently facing trial. The prior convictions are only relevant as to sentencing and should only be admitted during a separate sentencing phase.

¶21. This will not place an onerous burden on the State. Miss. Code Ann. § 63-11-30(6) requires judges to forward a copy of the citation, an affidavit, or "any other pertinent documents concerning the conviction" to the Commissioner of Public Safety. The statute further provides that any of these documents, once verified by the Commissioner, "shall be sufficient proof of the conviction for purposes of determining the enhanced penalty for any subsequent convictions." Therefore, they can be used in the sentencing phase by the judge.

### 2. WHETHER THE LOWER COURT ERRED IN PERMITTING THE STATE OF MISSISSIPPI TO CROSS-EXAMINE THE APPELLANT REGARDING HIS DISRESPECT OF THE LAW BECAUSE HE WAS DRIVING WITHOUT A VALID DRIVER'S LICENSE.

¶22. During the State's cross-examination of Strickland, the following testimony was elicited in regard to why he had given the wrong last digit when asked for his Social Security number:

Q: Now, it didn't have anything to do with the fact that you were driving and you had no license at all, right; didn't have anything to do with that?

A: No, it didn't have nothing to do with that.

Q: But you were driving with a license that was suspended because you commit DUI's, right?

A: Yes, sir.

Q: So when you got in the car to drive to the tobacco store, you were completely in the violation of the law -

BY MR. STEPHENSON: Object, Your Honor, under 404, and it is not relevant.

BY MR. ANGERO: It is relevant, too, Judge.

BY MR. STEPHENSON: The fact that he -

BY THE COURT: No, sir, I think it is relevant and I believe it is more probative than prejudicial.

Q: When you got into the car to drive to down to that tobacco store it was a violation of the law of the State of Mississippi for you to get behind the wheel to go anywhere in that car; isn't that right?

A: Yes, sir.

Q: But you just disregarded that, correct; is that correct?

A: I just drove my truck over there.

Q: You disregarded the law that says your license is revoked, you have been driving under DUI and you cannot drive a car, and you said well, I am not worried about that, and you drive on to the tobacco store anyway, right?

A: (No response)

Q: Is that right?

A: I went to the tobacco store.

¶23. The State argues that Strickland's credibility was placed directly in issue when he denied that he ever told Officer Beckman that he was drunk.[1] The State claims that as a result it was appropriate to cross-examine Strickland on the issue of giving a false Social Security number to Officer Lee prior to speaking with Beckman. The State attempted to prove that Strickland lied in order to hide the fact that he was driving without a valid driver's license, which, argues the State, goes to show Strickland's motive for lying, which is admissible under M.R.E. 404(b).

¶24. Strickland argues that the sole reason for the above line of questioning was to show that he possessed a bad character and, as a lawbreaker, the jury could infer that he was driving under the influence on this occasion. In other words, the officers were to be believed and not the lawbreaker.

¶25. In *Mack v. State*, 650 So.2d 1289 (Miss. 1994), this Court set out the burden which must be met for admitting evidence under Rule 404(b). The proponent must (1) identify the consequential fact to which the proffered evidence of other crimes, wrongs or acts; and (2) prove the other crimes, wrongs or acts; and (3) articulate precisely the evidential hypothesis by which the consequential fact may be inferred from the proffered evidence. Once the evidence has met this burden, it must also pass the balancing test of probative value versus prejudicial effect found in Rule 403. *Mack*, 650 So.2d at 1311.

¶26. Strickland put both his own credibility, and that of Beckman, at issue when he claimed that Beckman had lied at trial. Strickland denied that he told Beckman that he was drunk while under custody. Since the charge against Strickland was driving under the influence, the evidence was highly relevant. In addition, proof that Strickland did not have a valid license due to a previous arrest was relevant to show why Strickland might have lied about his Social Security number. (Strickland claimed that he merely mixed up the last numbers.) The evidence of Strickland's suspended license was admitted to show that Strickland had

not just accidentally mixed up the last numbers and was evidence of his motive to keep the officer from retrieving his record. Motive is a recognized exception from the general prohibition against proof of other crimes under M.R.E. 404(b). As a result, this assignment of error also fails.

### 3. WHETHER LOWER COURT ERRED IN NOT GRANTING A MISTRIAL WHEN THE JURY WAS TOLD THAT STRICKLAND WAS A CONVICTED FELON.

¶27. When being cross-examined by Strickland's attorney regarding how many arrests he had made since arresting Strickland in 1994, Trooper Carter stated the following:

Q: Officer Carter, on January 5, 1994, - -that was what, four and a half years ago? - - are you telling me that you can remember whether or not he blew into the machine or didn't blow into the machine?

A: Well, what I am telling you is that I am answering the best I can according to my memory.

Q: Okay. Now, it's about four and a half years since then. About how many people have you arrested?

A: It would just be a guess. I wouldn't have any -

Q: A couple of thousand?

A: I couldn't really know for sure. I would have to check my records.

Q: I mean, would that be a ballpark figure?

A: No, sir.

Q: More than that?

A: No, sir, it wouldn't be that many.

Q: Okay. So, I mean, are you telling me four and a half years ago, when he asked you about this test given on January 5, 1994, the refusal, you just don't remember, right, it's just a refusal?

A: On that particular instance, what I arrested Bobby, that I charged him with driving under suspicion for DUI and for carrying a - - convicted felon carrying -

BY MR. STEPHENSON: All right. Judge, now, I am going to object to that and then ask the Court to instruct the jury -

BY THE COURT: I will instruct the jury to disregard the last statement.

¶28. Strickland contends that the judge erred in not granting a mistrial in Strickland's favor. He points out that Carter's testimony was extremely prejudicial since the issues in the case revolved around whether the jury believed Strickland or the state troopers. According to Strickland, the statement made by Carter was a violation of M.R.E. 609(a) and 403, and the judge's direction to the jury to disregard the statement was not enough to cure the error. The State points out that generally a defendant cannot complain of damaging testimony when it is in response to his questions. *Griffin v. State*, 504 So.2d 186, 192 (Miss. 1987).

¶29. In *Hoops v. State*, 681 So.2d 521 (Miss. 1996), the defendant complained that during his trial a witness made references to other aggravated assaults allegedly committed by him (Hoops) prior to the shooting in question. However, the references were elicited by Hoops's counsel during cross-examination of Bell. The pertinent testimony was as follows:

> Q: You made some statements earlier, sir, about knowledge of Timmy Hoops being in a gang. How do you know that personally? Were you at the gang initiation?
>
> A: No. I just--we used to come over to Timmy Hoops house, you know, to visit, you know. And Timmy Hoops has got one of the rags and everything.
>
> Q: I can't understand what you said.
>
> A: He used to have one of the rags and everything, scarf, red bandana.
>
> Q: So, he was wearing a red bandana. That's how you knew that he was allegedly affiliated--
>
> A: --Yeah. He used to shoot at other G's, what I recall, too.
>
> Q: I couldn't understand what you said.
>
> A: He used to shoot at other G's, what I recall. You know what I'm saying.
>
> Q: I think so.

¶30. In finding no reversible error by the judge, this Court held that the record showed that Hoops's attorney was not blindsided by Bell's comments and that Bell gave a direct and responsive answer to the question. "Hoops elicited the response and therefore cannot complain that the answer was one he did not want." *Hoops*, 681 So.2d at 528.

¶31. The trial judge may alleviate the potential damage of such testimony by addressing the statement with the jury, instead of declaring a mistrial. *See Hoops*, 681 So.2d at 528. This Court has held that the trial court's instruction to the jury to disregard such testimony is sufficient to prevent prejudice. *See Baine v. State*, 604 So.2d 249, 257 (Miss.1992)(Court held that only "if the inadmissible testimony is so damaging that its effect upon the jury could not be adequately tempered by admonition or instruction, the trial court should grant a mistrial."); *Dennis v. State*, 555 So.2d 679, 682-83 (Miss.1989); *Wright v. State*, 540 So.2d 1, 4 (Miss.1989) ("Absent unusual circumstances, where objection is sustained to improper questioning or testimony, and the jury is admonished to disregard the question or testimony, we will not find error").

¶32. The decision to grant a mistrial because of potentially damaging statements is left to the discretion of the trial judge, and the trial judge must grant a mistrial if he believes that the challenged testimony is so damaging that his instructions to the jury could not adequately temper the testimony's effects. *See Hoops*, 681 So.2d at 528. Each case must be decided individually in determining whether particular error constitutes reversible error. *Henderson v. State*, 403 So.2d 139, 140 (Miss.1981).

¶33. While there is little doubt that Carter's testimony regarding Strickland previously being arrested for possession of a firearm by a felon had the potential to bias the jury, consideration must be given as to whether the judge's instruction to disregard the statement was sufficient to ward off any prejudicial effect on

the jury. However, it is of great consequence whether Strickland's attorney invited Carter's response by his line of questioning during cross-examination. Finding that Carter's response was invited and should not have blindsided Strickland's attorney, this assignment of error fails as well.

## IV.

## CONCLUSION

¶34. This Court finds no reversible error in any of the three issues presented by Strickland. Evidence of Strickland's prior DUI arrest and breathalyzer test was admissible to rebut the claim made during opening statement that he had tried but was unable to sufficiently blow into the breathalyzer. There was also no error in the court admitting evidence that Strickland had a suspended driver's license at the time of arrest and that this was therefore one of the reasons he gave a false Social Security number to the arresting officer. Testimony that Strickland had previously been convicted of a felony was also harmless error, as Strickland's own attorney provoked the testimony during cross-examination of one of the State's witnesses. Strickland failed to object to the jury's being notified of his prior two DUIs and similarly failed to raise it on appeal. However, when a defendant is brought to trial for felony DUI under Miss. Code Ann. § 63-11-30, the judge and jury are aware that he has twice previously been convicted of DUI, as these are requirements for such a charge. A better procedure would be to allow information of past DUIs during trial only when it relates to the current charge, is allowed under the rules of evidence, and during the sentencing stage before the judge.

¶35. Finding none of Strickland's arguments meritorious, we affirm his conviction and sentence.

¶36. **CONVICTION OF FELONY DUI AS A HABITUAL OFFENDER UNDER MISSISSIPPI CODE ANNOTATED § 99-19-83 AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AND PAYMENT OF A FINE OF $2,000.00, ALL FEES AND COSTS, AFFIRMED.**

> **BANKS, P.J., WALLER AND DIAZ, JJ., CONCUR. PITTMAN, C.J., SMITH, COBB AND EASLEY, JJ., CONCUR IN RESULT ONLY. SMITH, J., CONCURS IN RESULT AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, C.J., MILLS AND COBB, JJ.**

> **SMITH, JUSTICE, CONCURRING IN RESULT AND DISSENTING IN PART:**

¶37. I agree with the plurality's result in affirming Strickland's conviction on all three issues raised on appeal. However, I disagree with the language at the end of part III (1) and of the plurality's conclusion stating:

> However, when a defendant is brought to trial for felony DUI under Miss. Code Ann. §§ 63-11-30, the judge and jury are aware that he has twice previously been convicted of DUI, as these are requirements for such a charge. A better procedure would be to allow information of past DUIs during trial only when it relates to the current charge is allowed under the rules of evidence as in this case and during the sentencing stage before the judge.

¶38. The plurality is simply criticizing this Court's recent decision in *Weaver v. State*, 713 So. 2d. 860 (Miss. 1997), without citing or expressly overruling it. Interestingly, the author of the plurality opinion here

joined the dissent in *Weaver* on the very issue concerned in the case at bar. I find no necessity for the use of any of this critical language in this case.

¶39. In *Weaver,* this Court approved of the very procedure about which the plurality now complains. It is inappropriate to comment adversely in a plurality opinion by suggesting that a different procedure would be better than what this Court approved recently in *Weaver*. The Bench and Bar are entitled to consistency by this Court and to rely upon our opinion in *Weaver* unless and until this Court <u>clearly</u> overrules *Weaver*.

¶40. We crossed this bridge in *Weaver*. There is no reason to now undermine *Weaver* as does the plurality who effectively attempts to overrule *Weaver* without even mentioning it.

¶41. I respectfully concur in the result and dissent in part regarding the plurality's newly proposed procedure.

**PITTMAN, C.J., MILLS AND COBB, JJ., JOIN THIS OPINION.**

1. Quitman police officer Alton Beckham testified that Strickland refused to take the breathalyzer. Beckham stated that Strickland told him that he was drunk but that "it wasn't going to be on paper how drunk he was."